# 12-0565-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

EDGARDO SENSI,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

LAW OFFICE OF ANDREW FREIFELD
*Attorney for Defendant-Appellant*
30 Vesey Street, 6th Floor
New York, New York 10007
(212) 240-9406

TABLE OF CONTENTS

                                                                    Page

Table of Authorities                                                   v

JURISDICTIONAL STATEMENT                                               1

    A.  District Court Jurisdiction                 1

    B.  Court of Appeals Jurisdiction                2

    C.  Timeliness of Appeal                         2

    D.  Appeal from Final Judgment                   2

STATEMENT OF ISSUES PRESENTED FOR REVIEW                               3

    I.      WHETHER THE DISTRICT COURT ERRED IN
             DETERMINING THAT THE SEIZURE AND SEARCH
             OF A LOCKED BLACK BAG DISCOVERED DURING
             THE EXECUTION OF A SEARCH WARRANT
             IN SENSI'S HOME WAS AUTHORIZED BY THE
             EXECUTED WARRANT, WHERE THE SEARCH
             WARRANT DID NOT AUTHORIZE THE SEIZURE
             AND/OR SEARCH OF ANY LOCKED CONTAINER
             WHATSOEVER?

    II.     WHETHER THE PLEA AGREEMENT LACKED
             CONSIDERATION WHERE THE GOVERNMENT
             RECOMMENDED AND SENSI RECEIVED THE
             MAXIMUM SENTENCE ALLOWABLE BY LAW,
             85 YEARS, AND THE ONLY PROMISE MADE BY
             THE GOVERNMENT TO INDUCE THE GUILTY
             PLEAS WAS AN AGREEMENT TO ALLOW SENSI TO
             APPEAL THE SUPPRESSION ORDER, A RIGHT
             HE WOULD HAVE RETAINED ANYWAY
             WHEN HE RECEIVED THE MAXIMUM
             SENTENCE AFTER TRIAL?

i

III.    WHETHER THE 85 YEAR SENTENCE OF IMPRISONMENT, THE MAXIMUM ALLOWABLE UNDER THE LAW FOR THE CRIMES TO WHICH SENSI PLED GUILTY, WAS SUBSTANTIVELY UNREASONABLE?

<u>Page</u>

STATEMENT OF THE CASE    3

STATEMENT OF FACTS    5

    The Indictment    5

    Motion Practice Regarding Suppression    5

    The Hearing On Sensi's
Suppression Motions    11

        Detective Broughton's
Testimony at the Hearing    11

        Sensi's Testimony
at the Hearing    15

    The Post-Hearing Ruling
On Defendant's Suppression Motion    17

    The Plea Agreement    18

    The Hearing On
Sensi's Guilty Pleas    22

    The PSR    25

    Sensi's Sentencing Memorandum    28

    The Government's Sentencing Memorandum    30

|  |  | Page |
|---|---|---|
| The Sentencing |  | 31 |
| **ARGUMENT** |  | 36 |
| I. | THE DISTRICT COURT ERRED IN DETERMINING THAT THE EXECUTED WARRANT AUTHORIZED THE SEIZURE AND SEARCH OF THE LOCKED BLACK BAG, BECAUSE THE WARRANT AUTHORIZED THE SEIZURE AND/OR SEARCH OF NO CONTAINER WHATSOEVER, MUCH LESS A LOCKED ONE . . . . | 36 |
| | A. It Is Undisputed That Det. Broughton Searched The Black Bag Without Obtaining A New Search Warrant | 39 |
| | B. The Standard of Review is *de Novo* | 40 |
| | C. The Particularity Requirement Requires That A Search Be Confined To The Terms And Limitations Of The Warrant Authorizing It | 40 |
| | D. Det. Broughton Lacked Authority To Break The Lock On The Bag And To View The Videocassettes Discovered Therein Without First Obtaining A Separate Warrant | 45 |
| | E. Conclusion | 47 |
| II. | THE PLEA AGREEMENT LACKED CONSIDERATION BECAUSE THE GOVERNMENT OFFERED NOTHING IN EXCHANGE FOR SENSI'S PLEAS THAT HE WOULD NOT HAVE HAD HE GONE TO TRIAL. . . . . . . | 48 |

Page

III.  THE 85 YEAR SENTENCE OF IMPRISONMENT, THE
      MAXIMUM ALLOWABLE UNDER THE LAW FOR
      THE CRIMES TO WHICH SENSI PLED GUILTY,
      WAS SUBSTANTIVELY UNREASONABLE . . . . . .   52

CONCLUSION. . . . . . . .                           57

iv

# TABLE OF AUTHORITIES

Page(s)

<u>The Constitution of the United States</u>

*The Fourth Amendment* . . . . . . . .                    40-47

<u>Cases</u>

*Arkansas v. Sanders*, 442 U.S. 753 (1979) . . . . . . . .          45, 46

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010)        53

*Colorado v. Bertine*, 479 U.S. 367 (1987) . . . . . . . .        45

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) . . . . . . . .    43

*Corbitt v. New Jersey*, 439 U.S. 212 (1978) . . . . . . . .       50

*Ex parte Jackson*, 96 U.S. 727 (1878) . . . . . . . .          45

*Gall v. United States,* 552 US 38 (2007)                53

*Go-Bart Importing Co. v. United States,* 282 US 344 (1931)      42

*Horton v. California*, 496 US 128 (1990) . . . . . . . .        45

*Marron v. United States,* 275 US 192 (1927) . . . . . . . .     42, 44

*Maryland v. Garrison,* 480 US 79 (1987). . . . . . . . .        41

*Smith v. Ohio*, 494 U.S. 541 (1980) . . . . . . . .           45

*Stanley v. Georgia*, 394 US 557 (1969) . . . . . . . .         41

*Texas v. Brown,* 460 US 730 (1983) . . . . . . . .           8, 46

*United States v. Brunetti,* 376 F.3d 93 (2d Cir. 2004) . . . . . . . .   49-50

<u>Cases</u>                                                              <u>Page(s)</u>

*United States v. Carey,* 173 F.3d 1268 (10th Cir. 1999) . . . . . . . .          46

*United States v. Cavera,* 550 F.3d 180 (2d Cir. 2008) (*en banc*) .          54

*United States v. Chadwick*, 433 U.S. 1 (1977) . . . . . . . .          45

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010)          52-56

*United States v. Dzialak*, 441 F.2d 212 (2d Cir.),
*cert. denied,* 404 U.S. 883 (1971) . . . . . . . . . . . . . . . .          43, 44

*United States v. Fernandez,* 443 F.3d 19 (2d Cir. 2006) . . . . . .          53

*United States v. Fuccillo,* 808 F.2d 173 (1st Cir. 1987) . . . . . . . .          46

*United States v. George,* 975 F.2d 72 (2d Cir. 1992) . . . . . . . .          40, 41, 42

*United States v. Hernandez*, 2010 US Dist. LEXIS 719 (SDNY 2010)          43

*United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . .          46

*United States v. King,* 227 F.3d 732 (6th Cir. 2000) . . . . . . . .          46

*United States v. Martin*, 157 F.3d 46 (2d. Cir. 1998) . . . . . . . .          46

*United States v. Matias,* 836 F.2d 744 (2d Cir. 1988) . . . . . . . .          43

*United States v. Parrilla-Tirado,* 22 F.3d 368 (1st Cir. 1994)          50

*United States v. Place*, 462 U.S. 696 (1983)          45, 46

*United States v. Reap*, 391 Fed. Appx. 99, 102
(2d Cir. 2010), *cert. denied,* 131 S.Ct. 3040 (2011)
(summary order) . . . . . . . . . . . . . . . . . . . . . . . .          50

Cases                                                          Page(s)

*United States v. Rigas,* 583 F.3d 108 (2d Cir. 2009)              53

*United States v. Rodriguez*, 356 F.3d 254 (2d Cir. 2004)          40

*United States v. Rosa,* 626 F.3d 56 (2d Cir. 2010)
*cert. denied*, 132 S. Ct. 2424 (2012) . . . . . . . .             41

*United States v. Ross,* 456 US 798 (1982) . . . . . . . .         43, 45

*United States v. Salcido-Contreras,* 990 F.2d 51 (2d Cir.),
*cert. denied,* 509 US 931 (1993) (per curiam) . . . . . . . .     49

*United States v. Shi Yan Liu,* 239 F.3d 138 (2d Cir. 2000),
*cert. denied*, 534 U.S. 816 (2001) . . . . . . . .                41, 42

*United States v. Van Leeuwen*, 397 U.S. 249 (1970) . . . . . . . .  45

*United States v. Voustianiouk*, 685 F.3d 206 (2d Cir. 2012) .     38, 40

*United States v. Young,* 745 F.2d 733, 759-60 (2d Cir. 1984)
*cert. denied,* 470 US 1084 (1985) . . . . . . . .                 41

*Walter v. United States,* 447 US 649 (1980)  . . . . . . . .      45

Statutes

18 USC §§ 371 . . . . . . . . . . . . . . .                        5

18 USC § 2251(a) . . . . . . . . . . . . . . .                     6

18 USC § 2251(c)(1) . . . . . . . . . . . . . . .                  6

18 USC § 2423(c) . . . . . . . . . . . . . . .                     6

18 USC § 3231. . . . . . . . . . . . . . .                         1

vii

|                                          | Page(s)    |
| ---------------------------------------- | ---------- |
| 18 USC § 3553. . . . . . . . . . . . . . . | 28         |
| 28 USC § 1291. . . . . . . . . . . . . . . | 2          |

United States Sentencing Guidelines

| USSG § 2G2.1(a) . . . . . . . . . . . . . . . | 26, 27  |
| USSG § 2G2.1(b)(1)(A) . . . . . . . . . . . . . . . | 26, 27  |
| USSG § 2G2.1(b)(2)(A) . . . . . . . . . . . . . . . | 26, 27  |
| USSG § 2G2.1(b)(5) . . . . . . . . . . . . . . . | 26      |
| USSG § 2G2.1(b)(1)(A) . . . . . . . . . . . . . . . | 26      |
| USSG § 3D1.2(b) . . . . . . . . . . . . . . . | 25, 26  |
| USSG § 3E1.1(a) . . . . . . . . . . . . . . . | 26, 27  |
| USSG § 5D1.2(b)(2) . . . . . . . . . . . . . . . | 28      |

Rules

| Fed. R. Crim P. 11(a)(2) | 18, 31, 39 |

viii

Appellant Edgardo Sensi ("Sensi") appeals from a judgment in a criminal case, entered on February 2, 2012, in the United States District Court for the District of Connecticut, by the Hon. Warren W. Eginton, Senior United States District Court Judge, after Sensi pled guilty to four counts consisting primarily of producing child pornography, and was sentenced principally to 85 years incarceration.  He is currently serving that sentence.[1]

## JURISDICTIONAL STATEMENT

A.  District Court Jurisdiction

The District Court had jurisdiction over the case pursuant to 18 USC § 3231, which grants original jurisdiction to the district courts of all offenses committed against the laws of the United States.  The indictment charged and Sensi pled guilty to four counts which are all offenses committed against the laws of the United States, to wit, one count each under 18 USC §§ 371, 2251(a) & 2, 2423(c), and 2251(c)(1).

---

[1]  An appendix ("A") has been filed with this brief.  A number that follows a colon that follows an "A" in this brief refers to the page of the appendix.  Other numbers that follow another colon after the first number refer to specific lines on the referenced page.  A copy of the District Court Docket Sheet for this case is at A:1-15.

B.  Court of Appeals Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 USC § 1291, in that Sensi appeals from a final judgment of conviction and sentence, imposed on January 31, 2012, and entered on February 2, 2012.[2]

C.  Timeliness of Appeal

The final judgment of conviction and sentence was imposed on January 31, 2012, and entered on February 2, 2012.  Sensi filed a timely Notice of Appeal on February 6, 2012.[3]

D.  Appeal from Final Judgment

This appeal is from a final judgment in that it is an appeal from the January 31, 2012 sentencing of Sensi, and from the entry of judgment against him in this criminal case on February 2, 2012, by the Hon. Warren W. Eginton, Senior United States District Court Judge for the District of Connecticut.

---

[2] A copy of the judgment is attached to this brief as a Special Appendix.

[3] A copy of the notice of appeal is at A: 510-11.

2

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.     WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT
       THE SEIZURE AND SEARCH OF A LOCKED DUFFLE BLACK BAG
       DISCOVERED DURING THE EXECUTION OF A SEARCH WARRANT
       IN SENSI'S HOME WAS AUTHORIZED BY THE EXECUTED
       WARRANT, WHERE THE SEARCH WARRANT DID NOT
       AUTHORIZE THE SEIZURE AND/OR SEARCH OF ANY LOCKED
       CONTAINER WHATSOEVER?

II.    WHETHER THE PLEA AGREEMENT LACKED CONSIDERATION
       WHERE THE GOVERNMENT RECOMMENDED AND SENSI
       RECEIVED THE MAXIMUM SENTENCE ALLOWABLE BY LAW, 85
       YEARS, AND THE ONLY PROMISE MADE BY THE GOVERNMENT
       TO INDUCE THE GUILTY PLEAS WAS AN AGREEMENT TO ALLOW
       SENSI TO APPEAL THE SUPPRESSION ORDER, A RIGHT HE
       WOULD HAVE RETAINED ANYWAY WHEN HE RECEIVED THE
       MAXIMUM SENTENCE AFTER TRIAL?

III.   WHETHER THE 85 YEAR SENTENCE OF IMPRISONMENT,
       THE MAXIMUM ALLOWABLE UNDER THE LAW FOR
       THE CRIMES TO WHICH SENSI PLED GUILTY, WAS
       SUBSTANTIVELY UNREASONABLE?

## STATEMENT OF THE CASE

Based on allegations that child pornography had recently been downloaded

to a computer in Sensi's home in Jensen Beach, Florida, a local judge, issued a

search warrant for Sensi's home on September 9, 2008, which was executed by

local authorities on September 10, 2008.  They recovered videocassettes, including

from a locked black duffle bag, depicting Sensi engaged in sex acts with children.

3

A four count superseding indictment was filed in April, 2009, in the District of Connecticut, accusing Sensi in two counts of having conspired with another to produce visual depictions of a minor engaged in sex acts, from in or about 2001 to 2004, in Connecticut, and in two other counts with having engaged in and recorded illicit sexual acts with a different minor, in Nicaragua, in or about 2004-2005. All of the counts in the indictment were based on these seized videocassettes.

Sensi's motion to suppress the videocassettes was denied from the bench after an evidentiary hearing conducted on June 8, 2010, the Hon. Warren W. Eginton presiding.

Sensi pled guilty on July 8, 2010, to all four counts of the superseding indictment, the Hon. Warren W. Eginton presiding, with the Government consenting to Sensi's appeal of the order denying suppression.

On January 31, 2012, Sensi, age 55, in Criminal History Category 1, was sentenced principally to the maximum allowable term of imprisonment under each count, to run consecutively to the other, for a total of 85 years incarceration.

## STATEMENT OF FACTS

The Indictment

Sensi was the only defendant charged in a four-count superseding indictment filed on April 2, 2009.[4]  Counts one and two concerned principally the production of child pornography in Connecticut, involving a minor victim (M.V. #1), and counts three and four concerned principally illicit sex acts and the production of child pornography in Nicaragua involving a different minor victim (M.V. #2).

Count one charged Sensi with Conspiracy (to produce child pornography) in violation of 18 USC § 371.  It alleged in sum and substance that from 2001-2004, he and co-conspirator, Jane Doe #1, in the District of Connecticut and elsewhere, enticed M.V. #1 "who was approximately eight years old at the beginning of the period of the conspiracy, to engage is sexually explicit conduct for the purpose of producing visual depictions of such conduct . . . ."[5]

The overt acts set out in the conspiracy count included:

"In and about April and May 2001, Sensi and Jane Doe #1 enticed M.V. #1 to engage in sex acts with them by, among other things, encouraging M.V. #1 to watch pornographic movies with them.

---

[4]  The first indictment is at A: 16-20.  The superseding indictment is at A: 21-29.

[5]  The record later disclosed that Jane Doe #1 is Laura Culver, the mother of M.V. #1.

5

"On or about April and May, 2001, Sensi and Jane Doe #1 engaged in intercourse while M.V. #1 was present and ultimately Sensi attempted to engage in intercourse with M.V. #1.

"SENSI maintained . . . videotapes of his sex sessions with M.V. #1"

Count two charged Sensi with Production of Child Pornography in the United States in violation of 18 USC § 2251(a) & 2, and alleged, in sum and substance, that in or about 2001, in the District of Connecticut and elsewhere, Sensi enticed M.V. #1 to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct.

Count three charged Sensi with Illicit Sexual Conduct in Foreign Places in violation of 18 USC § 2423(c), and alleged that during various trips to Nicaragua beginning in January 2004 and continuing until 2005, Sensi engaged in illicit sexual conduct with M.V. #2, who was four years old when the conduct began, with the cooperation of her 23-year old mother, Jane Doe #2, a Nicaraguan woman, including "engaging in sex acts with Jane Doe #2 and M.V.#2 simultaneously" and "videotap[ing] some of his sex sessions" with them.[6]

Count four charged Sensi with Production of Child Pornography Outside the U.S. in violation of 18 USC § 2251(c)(1), in that Sensi, in or about February 2004 until in or about 2005, in the District of Connecticut, Nicaragua, and elsewhere,

---

[6] The Government maintained in its sentencing memorandum that Jane Doe #2 was 19 years old at the time of the crimes.

did, in sum and substance, entice M.V. #2 to engage in sexually explicit conduct in Nicaragua, for the purposes of "producing visual depictions of such conduct, and did transport the visual depictions to the United States".

Motion Practice Regarding Suppression

In papers filed on January 19, 2010, Sensi moved for suppression of evidence seized by officials of the Martin County, Florida, Sheriff's Office ("MCSO"), at Sensi's home, pursuant to a search warrant executed on September 10, 2008, at 2750 NW Windmere Drive, Jensen Beach, Florida 34957.[7] Sensi acknowledged being present when the search warrant was executed.

The search warrant and its supporting affidavit (dated September 9, 2008) were attached to the motion papers.[8] The affiant, Detective Brian Broughton of MCSO, who later executed the warrant, asserted that there existed probable cause to believe that child pornography had recently been downloaded from the internet to a computer inside of 2750 NW Windmere Drive, Jensen Beach, Florida, and that Sensi occupied the premises.

The search warrant, issued on September 9, 2008, by a Judge in the Circuit Court of the Nineteenth Judicial Circuit in and for Martin County, Florida, authorized MCSO to search the single family home "occupied by or under the

_____

7  Sensi's moving papers of January 19, 2010 are at A: 31-61.

8  The search warrant is at A: 298-301.  The supporting affidavit is at A. 302-16.

control of" Sensi, located at 2750 NW Windmere Drive, Jensen Beach, Florida, and to seize therein, *inter alia*, "[i]images, movies, or visual depictions of sexual conduct or sexual performance by a child or children . . . ." (A:302)

Specifically, Sensi sought suppression of all of the videocassettes, which he alleged contained all of the images underlying the indictment, recovered from a locked black duffle bag, which was discovered in defendant's closet by MCSO upon the execution of the warrant. Sensi preserved the *Fourth Amendment* issue presented to this Court on this appeal by arguing for suppression of the contents of the locked black duffle bag on the following grounds:

> "Detective Broughton not only seized the locked black canvas bag from Defendant's closet without authority to do so, but searched it prior to the issuance of a valid search warrant permitting such a search. Detective Broughton was obligated to obtain a separate search warrant prior to actually searching the bag. . . . Recognizing the generally less intrusive nature of a seizure, the [Supreme] Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, but has held that an actual warrant is still necessary to conduct a search. . . . *Texas v. Brown,* 460 US 730, 749-50 (1983) (Stevens, J., concurring) (container may be seized if there is probable cause to believe it contains contraband, but container may not be searched without a warrant from a neutral magistrate). . . . Therefore, the search of the locked black canvas bag violated the Defendant's Fourth Amendment rights because the police did not obtain a warrant prior to doing so."

(A: 58-60) (other citations omitted).

8

In its responding papers, filed on February 16, 2010,[9] the Government

described the discovery of the locked black bag during the execution of the search

warrant at Sensi's home:

> "law enforcement also located two duffle bags. Both were located
> in Sensi's closet. One was a big red duffle bag. . . . The red duffle
> bag contained adult pornography as well as additional
> videocassettes which {sic} markings . . . included "XXX" and
> dates. . . . There was also a black duffle bag with a lock on it . . . .
> Officer {sic} Broughton will testify that he did not want to seize the
> black back (sic) if it didn't contain anything pertinent to his
> investigation so he specifically asked Sensi if he had a key to the
> bag and. {sic} Sensi looked at him and told him that he did not
> have a key to the black duffle bag. When Broughton asked Sensi
> what was in the bag, Sensi replied 'take it, it's porn'".

(A:66) (footnotes omitted).

Tellingly, the Government opted not to disclose the circumstances under

which the locked black bag was opened and searched, including whether MCSO

failed to first obtain a separate search warrant as Sensi alleged. Instead, the

Government asserted only that the seizure and search of the black bag was

authorized by the language of the executed warrant.

The Government denied Sensi's allegation that all of the images underlying

the indictment were recovered from the locked black bag, admitting that the

images underlying counts one and two were recovered from the black bag, but

---

[9]  The Government's responding papers of February 16, 2010 are at A: 62-79.

averring that the images underlying counts three and four were recovered from the red bag.  (A:66)

In sum, the Government argued that the language of the search warrant authorized the seizure and search of the black bag, and that Sensi consented to its seizure and search in any event when he stated "take it, it's porn".

On May 3, 2010, Sensi filed an affidavit in which he denied consenting to a search of the black bag.[10]  Sensi also moved for suppression of any statements he may have made to law enforcement during the execution of the warrant, on the ground that the statements were the product of custodial interrogation in the absence of a *Miranda* waiver.[11]

In its filing on May 27, 2010, the Government again asserted that the search of the black bag did not violate Sensi's *Fourth Amendment* rights because "the contents of the black duffel bag were clearly within the four corners of the warrant", and covered by its "plain language".[12]

At the close of the hearing conducted on Sensi's suppression motions on June 8, 2010, the Hon. Warren W. Eginton, ruling from the bench, identified the three issues that the Court deemed presented to it by the record (though it

---

[10]  Sensi's affidavit of May 3, 2010 is at A: 95-96.

[11]  Sensi's motion to suppress statements is at A: 80-82.

[12]  The Government's filing of May 27, 2010 is at A: 105-127.

determined that it need not adjudicate the third): (i) whether the language in the executed warrant authorized the seizure and search of the locked black bag, (ii) whether Sensi was in custody when the search warrant was executed, and (iii) whether Sensi consented to the seizure of the black duffle bag.[13]

The Hearing On Sensi's
Suppression Motions

When the case appeared on the Court's calendar on June 8, 2010, the Government proposed: "[i]f your Honor finds that the black bag is covered under the four corners of the warrant, I don't think we actually need an evidentiary hearing", (A: 135).

The Court ordered "a full evidentiary hearing" (A:138), which was conducted straightaway. One witness testified for the Government, Detective Brian Broughton of MCSO. One witness testified for the defense, defendant Edgardo Sensi.

Detective Broughton's Testimony at the Hearing[14]

DETECTIVE BRIAN BROUGHTON has been employed by MCSO as an officer for the past 18 years, and for the past 14 has been assigned to its Crimes

---

[13] We challenge on this appeal only the District Court's ruling on the first issue.

[14] Detective Broughton's testimony is at A: 139-250.

11

Against Children Division. (A:140-41) As such, his duties have included investigating "crimes involving the physical and sexual abuse of children, as well as the exploitation of children on the internet" (A: 141)

On August 27, 2008, Broughton identified an Internet Protocol Address[15] that he had reason to believe had downloaded from the internet what appeared to be child pornography on a number of recent occasions.[16] (A: 141, 146) Further investigation disclosed that Comcast had issued the IP address to Sensi, at the address of Sensi's home, 2750 NW Windmere Drive, Jensen Beach, Florida. (A: 142)

That information was set out in Broughton's affidavit for a search warrant of Sensi's home, which was signed by Judge Metzger on September 9, 2008. (A:143-44) The affidavit and the search warrant were admitted into evidence.[17] The search warrant authorized the seizure of 12 categories of physical evidence, including "[i]mages, movies, or visual depictions of sexual conduct or sexual performance by a child or children . . . ." (A:302)

---

[15] Det. Broughton defined an Internet Protocol Address as "your phone number to the internet. . . . . [Y]our internet company will assign you an IP address, and what you do is you can then access, they give you the ability to access the internet from this IP address". (A: 142)

[16] In the affidavit in support of the search warrant, Broughton identified the recent dates as from August 23, 2008 to August 26, 2008. (A:311)

[17] The search warrant is at A: 298-301. The supporting affidavit is at A. 302-16.

The warrant was executed at approximately 8:30-8:45am on September 10, 2008, by Det. Broughton and his partner, Det. Colasuonno, and the search ended approximately one hour later.  (A: 152)  A photograph of Sensi's home was admitted into evidence.[18]  Sensi was present throughout, as was his girlfriend, as was a uniformed officer for most of the time.  (A: 153)

Neither before nor upon his execution of the warrant, nor upon his departure from Sensi's home, did Det. Broughton suspect that Sensi had ever been involved in the production of child pornography, only that he might possess it.  (A: 219)

Sensi answered the door after the detectives knocked.  (A:154)  In the doorway the detectives, in plainclothes, informed Sensi that they were conducting a "computer investigation" involving child pornography, and read the search warrant to him.  (A: 154, 155)

Sensi invited the detectives in and showed them his computer.  (A:155)  The search proceeded, with the officers seizing property, and photographing the interior of the home and its contents.  (*Id*.)

The search in a bedroom revealed two closets, one containing a woman's clothes and the other a man's.  (A:166)  The latter also contained boxes and duffle bags on the floor.  (*Id*.)  In one of them, a red duffle bag, which the detectives unzipped, the detectives found commercial pornography and five videocassettes,

---

[18]  The photograph of Sensi's home is at A:317.

13

each containing the handwritten symbol "XXX" along with a female name, which they believed were non-commercial and homemade. (Id) A photograph of the red duffle bag was entered into evidence.[19] (*Id.*)

Of the contents of the red duffle bag, the officers seized only the five videocassettes with handwriting on them. (A:166, 168) A photograph of the five seized videocassettes was entered into evidence.[20] Nothing about the videocassettes showed that it contained child pornography. (A: 167-68, 219)

The officers also observed on the floor of the closet a locked black duffle bag the size of a bowling ball bag. (A: 169) A photograph of the locked black duffle bag was admitted into evidence.[21]

Det. Broughton asked Mr. Sensi for the key to the locked black bag, who replied he didn't have a key, and said: "take it, it's porn": (A:171) The detectives seized the black bag, removing it to the sheriff's office. (A:172)

The detectives did not know that the black bag contained child pornography when they left the house. (A:220)

Later in the day at the sheriff's office, Det. Broughton cut the lock off of the black duffle bag using a bolt cutter and reviewed its contents, including

---

[19] The photograph of the red duffle bag is at A: 318.

[20] The photograph of the five videocassettes allegedly seized from the red duffle bag is at A: 319.

[21] The photograph of the locked black duffle bag is at A: 320.

videocassettes, which he played.  (A: 173, 179, 209)  The videocassettes contained

footage of Sensi engaged in sex acts with a girl under the age of 12, along with a

woman, the girl's mother, participating.  The black duffle bag also included a 2001

New York Yankees preview magazine, photographs depicting child pornography,

stories (text) describing sex with children, "and something I think from the New

York Opera House".  (A: 173)

The detectives also reviewed the videocassettes recovered from the red

duffle bag.  (A167, 220)  Two of the tapes contained pornography depicting Sensi,

a child and another woman, all of whom appeared to be speaking Spanish, the

latter two of whom appeared to be of foreign descent.  (167, 178)[22]

Sensi's Testimony at the Hearing[23]

Defendant EDGARDO SENSI testified that he was home with his girlfriend

at 8:30am, getting ready to leave for work, when he answered either a knock or

bell at his door.  (A: 251)  Detectives Broughton and Colasuonno were before him

and identified themselves.  (*Id.*)  They showed Sensi the search warrant and said

that it authorized them to search for evidence of child pornography on computers at

---

[22] The testimony was thus consistent with the Government's allegation in its pre-hearing filing that the tapes underlying counts 1 and 2 were recovered from the locked black duffle bag, while the tapes underlying counts 3 and 4 were recovered from the red duffle bag.  (A: 66-67)

[23]  Sensi's testimony, at A: 251-291, has no bearing on this appeal, but we describe it nevertheless, so that this Court gets the full picture of the record before the District Court.

this residence. (A: 274)  They came in and conducted the search; it took some 20 perhaps 30 minutes. (A: 255)

Sensi showed Det. Broughton the two computers in the house and followed his direction to wait in living room with his girlfriend.

Sensi remained in the living room as the warrant was executed, except when Det. Broughton invited him into the bedroom.  The locked black duffle bag was on the bed, and the detective asked if Sensi had the key.  Sensi said no, and the detective responded that he would have to take the bag back with him to the office to break the lock.  "And that was the entire conversation".  (A. 254)

Thus, the detective never asked about the contents of the locked black duffle bag (A: 280), Sensi never described its contents (A: 281), Sensi never stated that the bag contained porn (A: 276-77), and Sensi never gave his consent to either the seizure or search of the bag.  (A:280)

The police left after executing the warrant, and Sensi went to work.  He was arrested later that evening when he voluntarily surrendered himself.  (A:283)  He has been incarcerated ever since.

The Post-Hearing Ruling
On Defendant's Suppression Motion

The Court received no argument at the close of the hearing and issued its

ruling from the bench, in its entirety as follows:

"All right. I'm going to rule from the bench on it because it didn't
turn out to be as complicated as I thought it might be, so I'll just
rule from the bench.

"I agree with [the Government] that the scope of the search warrant
is for me to determine, not for credibility of witnesses to determine.
It's an issue of my examining the language of the search warrant
and determining whether it covers anything other than computer
documents {sic}. And I hold on the basis of the language in it that
paragraph 1 is broad enough, and my attention was also called to
paragraph 4. I'm relying mainly on paragraph 1 as being enough to
cover the documents which are in question here as having been
seized. So on that issue I rule in favor of the Government. [24]

"The issue of custody I also find in favor of the Government, that
he was not in custody while they were making their relatively brief
investigation of the house and the contents to determine what they
could seize under the search warrant.

"Now, on the third issue I cannot find for the Government, I cannot
really find, make any finding with respect to consent with respect to
the black duffle bag which was locked. I find that there are

---

[24] Paragraphs 1 and 4 of the search warrant (A: 298-301) authorize the seizure of:

"1.  Images, movies, or visual depictions of sexual conduct or sexual
performance by a child or children . . . ."

       *          *          *          *          *

"4.  Computer storage media and the digital content to include but not
limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks
or other magnetic, optical or mechanical storage which can be accessed
by computers to store or retrieve data or images of child pornography".

credibility issues and I cannot really resolve those credibility issues
as to what he said or didn't say with respect to that black duffle
bag. So the black duffle bag would have to be covered, as I am
covering my ruling {*sic*}, with respect to the language of the search
warrant"

(A:291-92)[25]

The record is clear that in referring to "documents", the Court had in mind

the videocassettes.

On this appeal we challenge the Court's ruling only as to the first issue.

The Plea Agreement

On July 8, 2010, Sensi and the Government entered into a plea agreement

(the "Plea Agreement").[26] In the Plea Agreement the Government acknowledges

quite candidly that they make but one promise to induce Sensi's four guilty pleas

(A:321) (emphasis in original):

"Pursuant to Fed.R. Crim.P. Rule 11(a)(2), the <u>only</u> promise that
the Government is entering into for the purposes of this plea is to

---

[25]  Paragraphs 1 and 4 of the search warrant authorize the seizure of:

"1.    Images, movies, or visual depictions of sexual conduct or    sexual
performance by a child or children . . . ."
        *        *        *        *        *
"4.    Computer storage media and the digital content to include but not
limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks
or other magnetic, optical or mechanical storage which can be accessed
by computers to store or retrieve data or images of child pornography".

[26]  The Plea Agreement is at A: 321-330.

permit the defendant to reserve his right to appeal the Court's June
8, 2010 ruling relating to the suppression hearing".

The Plea Agreement reemphasizes the point in its penultimate paragraph: "[t]he

defendant understands that there are **no** other, promises, agreements, or conditions

that bind the Government in this case". (A:326) (emphasis in original) Thus, for

example, the Government also states that it "has made no promises or

representations of any kind with respect to whether defendant has accepted

responsibility for his conduct".[27] (A:323) The Government also states its view

that that "the applicable term of incarceration under the Guidelines is ninety-five

(95) years of incarceration". (*Id.*)

     Sensi promises in the Plea Agreement that he will enter guilty pleas to all

four counts in the superseding indictment. (A:321) The parties agree that the

guilty pleas will be entered under Fed. R. Crim P. 11(a)(2), so that Sensi may

withdraw the guilty pleas if he prevails on the appeal of the order denying

suppression. (*Id.*)

     Exhibit A to the Plea Agreement sets out the elements of each of those four

offenses.[28] Exhibit A to the Plea Agreement also sets out the minimum and

---

[27] These three quotes advance our argument that the Government proffered no consideration to
Sensi in exchange for his promise to enter guilty pleas to all four counts in the superseding
indictment.

[28] Exhibit A to the Plea Agreement is at A: 330.

maximum penalties associated with each offense.[29]  Sensi acknowledges that he

understands the terms of the Plea Agreement, and Exhibit A thereto, and his

attorney acknowledges that he explained the Plea Agreement and Exhibit A thereto

to Sensi, who advised he understood their terms.  (A:326)

The Plea Agreement states (A:323): "the parties agree that . . . the defendant

reserves his right to appeal the district court's order dated June 8, 2010, which

denied his motion to suppress".  Otherwise, Sensi waived his rights to appeal or

collaterally attack his conviction in any proceeding, "[n]or will he pursue such a

challenge to the sentence imposed by the Court to the extent that his aggregate

sentence does not exceed the statutory maximum term of 95 years in prison . . . ."[30]

(*Id.*)

In the Plea Agreement, Sensi acknowledged that he is subject to the

minimum and maximum penalties set out in Exhibit A (the minimum being 15-,

and the maximum being 95-years incarceration),[31] and that the Court has discretion

---

[29]  As set out in Exhibit A (A: 330), Sensi faced up to five years imprisonment under count one, a
mandatory minimum of 15 years and up to 30 years imprisonment under count 2, a term of
imprisonment of up to 30 years on count three and a mandatory minimum of 15 years and a
maximum of 30 years imprisonment under count 4.

[30]  The Government later asserted that the statutory maximum is actually 85 years incarceration,
the term to which he was sentenced.

[31]  Before sentencing, the Government stated that the maximum sentence allowable under the
law was 85 years, the sentence imposed by the Court.

20

to order that any term of imprisonment on each count run concurrently or consecutively with any other.  (A:321)

Sensi acknowledged that he is subject to the alternative fine provision of 18 USC § 3571, that he is obligated to pay a special assessment of $100 on each count, and that a restitution order would issue.  (A:322)

Sensi acknowledged that the Court at sentencing is required by law to consider but is not bound by any applicable Sentencing Guidelines, is also required to consider all of the factors enumerated in 18 USC § 3553(a) to determine the sentence, and is not bound by any promises, representations or plea agreement. (A:322-23)

Sensi acknowledged that he enters into the Plea Agreement freely and voluntarily, and because he is guilty.  (A:321, 325)  He acknowledged his satisfaction with the advice he received from his "undersigned attorney", and that he was induced to enter into the Plea Agreement by nothing other than matters set out in the Plea Agreement.  (A:326)  Sensi acknowledged that no governmental authority is bound by the Plea Agreement except for the United States Attorney for the District of Connecticut.  (A:325)

The Hearing On
Sensi's Guilty Pleas

Also on July 8, 2010, the Court conducted a change of plea hearing, and then granted Sensi's petition for leave to enter guilty pleas.[32]  Under oath, Sensi informed the Court that he had been through four years of college, that the prescription drugs he was using bore no impact on his ability to understand the proceedings, and that he was not under the influence of alcohol.  Sensi acknowledged his satisfaction with his counsel, while his counsel acknowledged his satisfaction that Sensi understands the proceedings against him.  (A: 367-68)

Sensi understood that he was entering conditional guilty pleas, that is, as stated by the Court, Sensi was reserving the right "to have an appellate court, that'd be the Second Circuit, review an adverse determination of your pretrial motions, specifically the . . . ruling on [ ] suppression, and . . . you may appeal that, and if you prevail, you can then withdraw your guilty plea".  (A: 377)

Sensi understood that he has the right to counsel on the appeal (A: 375), which the Court would appoint for him if he could not afford it, and that this Court might "reverse the conviction [or] set you free . . ." (A: 375-76)

Sensi acknowledged that the guilty plea under count 1 authorized the Court to sentence him to a term of up to five years imprisonment, that the guilty plea

---

[32]  The petition is at A: 331-48.  The transcript of the change of plea hearing is at A: 349-400.

22

under counts two and four each carried a fifteen-year mandatory minimum sentence, and each authorized the Court to impose a sentence of up to thirty years, that the third count authorized the Court to impose a sentence of up to thirty years, and that the Court could order that each of the four sentences run consecutively, for a potential sentence of 95 years imprisonment, or that the Court might order that the sentences run concurrently, and that the Court could order that the sentence could run concurrently with any state sentence. Sensi also acknowledged that the Court might impose the same sentence as it would have imposed if he'd been convicted by a jury. (A: 370-72, 376, 378)

Sensi acknowledged that the guilty pleas authorized the Court to impose a minimum five-year term of supervised release following imprisonment, with a maximum life term of supervised release. Sensi also acknowledged that the guilty pleas authorized the Court to impose a fine on him of up to one million dollars, and that a mandatory special assessment would be imposed totaling four hundred dollars. (A: 371-72)

Sensi acknowledged further that the Federal Sentencing Guidelines are not binding on a federal judge, but they are "the start . . . . It's where we take off from as we consider sentencing". (A: 372) Sensi understood that no one now can tell him what sentence will be imposed, and that he will not be permitted to withdraw

his guilty pleas upon a claim that he pled guilty in reliance on some prediction that someone made to him regarding his sentence.  (A: 373)

Sensi acknowledged that by pleading guilty he was waiving his right to a jury or bench trial at which he'd be represented by counsel at no cost to him if counsel was unaffordable to him, at which the Government would have to prove his guilt beyond a reasonable doubt, that its failure would mean he'd be "set free", at which he would have the right to compel witnesses to testify, at which he or his counsel would have the right to cross-examine the Government's witnesses and challenge its case "from start to finish".  Sensi understands that by pleading guilty he gives up his trial right to testify at trial, or right not to testify, and that he could not "be compelled to put on any case whatsoever."  He further acknowledged giving up and defenses he may have available, and his privilege against self-incrimination.  (A: 374-75)

Sensi stated that no promises had been made to him to induce him to plead guilty other than those set forth in the Plea Agreement, and that no threats, coercion or force by anyone were behind the guilty pleas.  (A: 394)  Sensi acknowledged that the only other party to the Plea Agreement is the United States Attorney's Office for the District of Connecticut, and that the Agreement therefore

bound no other governmental entity.

Also, the following occurred: (A: 377):

> "THE COURT:   Now . . . no officer or agent of any branch of the
> government, federal, state, or local or anybody else, has made any
> promises to you, or suggestion of any kind, that you would receive
> a lighter sentence or a other {*sic*} leniency by pleading guilty at this
> time, except that I can consider and we do have a reduction in the
> sentencing guidelines ranges for . . . entering a plea of guilty and
> accepting responsibility.
>
> "So you understand there may be some benefit to you by this guilty
> plea.
>
> "THE DEFENDANT:   I understand, Your Honor."[33]

All of the elements of the four crimes to which Sensi was pleading guilty

were read into the record, as was the bulk of the Plea Agreement (A:378-94), Sensi

pled guilty to each of the four counts (A: 395-96),[34] and the Court signed the

petition Sensi had filed earlier that day to change his pleas.  (A: 395).

THE PSR

The PSR employed the November 1, 2011 Sentencing Guidelines manual.

Pursuant to USSG § 3D1.2(b), the PSR groups counts one and two together

("Group One"), and groups counts three and four together("Group Two"), because

each involves the same victim and two or more acts connected by a common

---

[33]  In light of the 85-year sentence imposed on Sensi, the maximum allowable under the law, the
Government can point to no benefit that Sensi received in exchange for his four guilty pleas, and
thus, as we argue at Point II, *infra*, the Plea Agreement lacks consideration.

[34] We respectfully refer the Court to A: 330 for the elements, which take up over six full pages of
the transcript of the change of plea hearing.

criminal objective, or constituting part of a common scheme or plan. Within each group, the guideline for counts two and four are used, because they result in a higher offense level than using either count one or three, pursuant to USSG § 3D1.2(b).

The total offense levels were calculated as follows:

Total Offense Level

Group One

| | | |
|---|---|---|
| Base Offense Level | USSG § 2G2.1(a) | 32 |
| Offense involved minor below the age of 12 | USSG § 2G2.1(b)(1)(A) | 4 |
| Offense involved the commission of a sexual act | USSG § 2G2.1(b)(2)(A) | 2 |
| Offense involved material Portraying masochistic or Sadistic conduct | USSG § 2G2.1(b)(5) | 4 |
| Minor was in care or custody of defendant | USSG § 2G2.1(b)(1)(A) | 2 |
| Adjustments | | 0 |
| Acceptance of responsibility | USSG § 3E1.1(a) | 0 |
| **Adjusted Offense Level**: | | **44** |

Group Two

| | | |
|---|---|---|
| Base Offense Level | USSG § 2G2.1(a) | 32 |
| Offense involved minor below the age of 12 | USSG § 2G2.1(b)(1)(A) | 4 |
| Offense involved the commission of a sexual act | USSG § 2G2.1(b)(2)(A) | 2 |
| Minor was in care or custody of defendant | USSG § 2G2.1(b)(1)(A) | 2 |
| Adjustments | | 0 |
| Acceptance of responsibility | USSG § 3E1.1(a) | 0 |
| **Adjusted Offense Level**: | | **40** |

Units

| | Adjusted Offense Level | Units |
|---|---|---|
| Group One | 44 | 1 |
| Group Two | 40 | <u>1</u> |
| | Total Units: | 2 |

| | |
|---|---|
| Increase in offense level based on total number of units | 2 |
| Highest adjusted offense level | 44 |
| Combined adjusted offense level | **46** |

Chapter 5 Part A, comment (n.2) contemplates that an offense level of more than 43 is to be treated as 43.

**TOTAL OFFENSE LEVEL:**     **43**

27

Criminal History Category

The PSR states that Sensi has no prior criminal conviction, no criminal history points, and is in a criminal history category of I.

Offender Characteristics

Sensi was born in Illinois on April 13, 1956.

Guidelines Range

The PSR states: "[b]ased on a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life and the guideline sentence is 95 years pursuant to USSG § 5G1.2(d)", and that a "term of supervised release of up to life on all counts is recommended pursuant to USSG § 5D1.2(b)(2).

The PSR's Evaluation

The PSR states that "a guideline sentence of 95 years' imprisonment would sufficiently address the statutory purposes of sentencing under 18 USC § 3553(a), and would not be greater than necessary".

Sensi's Sentencing Memorandum[35]

In Sensi's Sentencing Memorandum, submitted January 23, 2012, counsel maintained that a guideline sentence of 95 years, as recommended in the PSR, is greater than necessary to accomplish the goals of sentencing, and that a sentence of

---

[35] Sensi's Sentencing Memorandum is at A: 405-411.

28

20 years would be sufficient to serve the sentencing factors set out at 18 USC 3553(a), and would further the goal of like sentences for similarly situated defendants.  (A: 406)

Counsel emphasized that the district court has ample discretion to give each of the 3553(a) factors the weight it deems appropriate.  (A: 407)  Here, counsel argued, the Court should consider the history of the defendant, a 55 year old man with no prior criminal convictions.  (A: 405)  Counsel further maintained that once released after serving a 20-year sentence, Sensi would be on supervised release for life, a condition of which would likely be no contact with minor children in any capacity, and that his freedom would thus create no danger to the community, and that Sensi by that time presumably would have been afforded abundant mental and emotional counseling, with the aim of rehabilitation.  (A: 409)  Under these circumstances, a 20-year sentence would thus serve as a deterrent, and reflect the seriousness of the offense.

Counsel also pointed out that the co-conspirator under counts one and two, was the mother of MV# 1, Laura Culver, who had colluded and participated in making the child pornography, yet she faced a maximum of only twenty years for her crimes at her upcoming sentencing before the same Judge.[36]  (A: 408)

---

[36] *United States v. Laura Culver,* 3:09-cr-00077 (WWE) (D. Conn).  Judge Eginton sentenced Laura Culver to 8 years incarceration, on January 30, 2012, one day before he sentenced Sensi to 85 years.

Counsel also pointed to the sentencing in another infamous local case, against Douglas Perlitz,[37] an American, who ran a school for homeless boys in Haiti, funds for which he solicited from Americans, yet leveraged that position of trust to subject these poverty-stricken minor boys to sexual abuse, 15 boys alleged in the indictment, 8 to which he admitted guilt under a plea agreement. (A: 408) In December, 2010, Perlitz received a sentence of 19-and-one-half years incarceration.

Counsel maintained that the sentences imposed in *Culver* and *Perlitz* warranted that Sensi be sentenced to a 20-year incarceratory term.[38]

The Government's Sentencing Memorandum[39]

In its sentencing memorandum, the Government acknowledged that it had been mistaken in the Plea Agreement, and at the change of plea hearing, when it had represented that the maximum statutory sentence was 95 years. The maximum statutory sentence, and the Guideline sentence, is 85 years. (A: 449).

---

[37] *United States v. Douglas Perlitz,* 3:09-cr-207 (JBA) (D. Conn).

[38] Any basic internet search discloses that the *Sensi*, *Culver* and *Perlitz* prosecutions received abundant press in Connecticut.

[39] The Government's sentencing memorandum is at A: 444-54.

The Government emphasized that the videotapes that were the subject of counts one and two of the indictment "depict Sensi and the co-conspirator repeatedly abusing MV 1 and filming the abuse". (A: 445)

The Government further emphasized that counts three and four concerned Sensi's alluring a nineteen year old Nicaraguan woman, in Nicaragua, with promises of gifts and money, and later thereby accessing her four-year old child (MV2) to sexually abuse her. (A: 446)[40]

The Government maintained that Sensi "deserves nothing less than to spend the remainder of his natural life incarcerated", and asked that Sensi be sentenced to a term of incarceration "approximating the Guidelines calculation of 85 years". (A: 444, 453)

The Sentencing[41]

At the sentencing on January 31, 2012, the Court acknowledged having sentenced Laura Culver, the mother of MV#1 and Sensi's co-conspirator, to 8 years incarceration the day before. (A:461)

Defense counsel asked for a 20 year sentence, emphasizing that like sentences should be imposed for like crimes. Counsel weighed the sentencing of

---

[40]  The superseding indictment states the woman was 23 years old, and that the events occurred in 200405. (A: 26-27)

[41]  The transcript of the sentencing is at A: 455-509.

Laura Culver[42] the day before against this case, and noted that "[n]o one is in more of a trusted position to a child than their mother…."  (A:459-61)

Counsel also pointed to the sentencing of Douglas Perlitz, where Perlitz sexually abused over 15 young boys in Haiti and received a sentence of 19 and a half years incarceration. Counsel submitted that Sensi's crimes were no more serious or "inhumane" than Perlitz's.[43]

Counsel maintained that a 20-year sentence was appropriate for this 55-year old defendant, as it thus would serve as a deterrent, and is similar to the sentences imposed in the *Culver* and *Perlitz* cases. (A: 461, 486)

Over defense counsel's objection (A:466), the District Court granted the Government's request that persons be permitted to address the Court before sentencing.[44]  The foster parents of MV# 1 spoke to the Court. The mother stated:

> "[MV#1 now] tries to put [Sensi and her mother's crimes] behind her. She moves forward. She. . . graduated as an honor student from high school. She's a hard worker. She has many honors and accolades. She's in college now ...and making very, very good grades. She's doing well" (A: 470).

---

[42]  *United States v. Culver,* 3:09-cr-00077 (WWE) (D. Conn).

[43]  *United States v. Perlitz,* 3:09-cr-207 (JBA) (D. Conn).

[44]  Counsel objected to all those who spoke except the foster parents of MV#1.

A Mrs. E, told the Court that Sensi tried to seduce her, apparently when she was a teenager, but that "things didn't get too far because I separated myself from him". (A: 474)

A Ms. L stated that Sensi was her mother's boyfriend years ago, and that her mother helped facilitate Sensi's abuse of her when she was 7 years old. (A: 478)

The Government requested that the Court impose the maximum allowable sentence under the law, a term of 85-years incarceration. (A: 482)

Sensi spoke, and accepted responsibility for his "reprehensible" crimes. (A: 496) Sensi added that he believed that the Court erred in determining that the seizure and search of the locked black bag was authorized by the executed warrant.

Without objection, the Court made the factual allegations set out in the PSR part of the record. (A: 457-58)

The Court imposed the maximum sentence on each count, five years on count one, twenty years on count two, thirty years on count three and thirty years on count four, each to run consecutively with the other, for a total of 85 years, with a life term of supervised release on each count, to run concurrently. No fine attached in light of Sensi's financial affidavit, no restitution attached, and the Court imposed a special assessment of $400. (A:500)

33

The Court explained (A:501):

> "There's no point in me adding to what everybody has said here because it has been said {sic} so well said that all of the points that [the Government] brought out are what I was planning to bring out on 3553, and I concur with everything [the Government] said about the importance of the various elements of 3553, which has always been my Bible. I think the sentencing guidelines which happily are no long {sic} binding upon us, but are a good example of trying to carry out the goals of 3553 and that's what I use".

The Court acknowledged that "we'll go into a lot of things here that I don't think are ever to come into play but I really have to go through them anyway. The standard conditions of supervised release will apply if it ever takes effect". (A:501)

Sensi was ordered to commit no further crimes, to submit to a drug test within 15 days of the commencement of his term of supervised release, and "at least two periodic drug tests thereafter". {sic} Sensi was ordered to avoid contact with the victims of the charged offenses, to undergo sex offender treatment as directed by the Department of Probation after his release, and to abide by the terms of any program he is enrolled in for that purpose, including polygraph testing.

Sensi was ordered not to use computers, internet cable services or similar electronic devices to promote sexual relations with minors. Sensi was ordered to consent to the monitoring of his computer use by the Department of Probation, a service for which he might have to pay. (A: 503)

34

Sensi was ordered not to associate with children under the age of 18, except in the presence of a responsible adult, who was approved by the Department of Probation, and who knew about his background and the current offenses. Sensi was ordered to consent to the search of his home, vehicle and work place by Probation officers, at a reasonable time, and in a reasonable manner, based on reasonable suspicion of the presence of contraband or evidence, or for a violation of a condition of release, and to alert those with whom he lives that the home may be subject to search. (A: 502)

Sensi was ordered to submit to mental health treatment as ordered approved by the Bureau of Prisons and/or the Department of Probation, and to comply with any requests for financial information from the Department of Probation. (*Id.*)

Sensi was ordered to possess no firearm. The Court also ordered that he not loiter near playgrounds, schools, arcades or other places where children under 18 may gather. (A: 504)

Sensi was ordered not to associate with other convicted sex offenders unless as part of a counseling group approved by Probation. Sensi was ordered to never hold any position of guidance or trust over children or youth groups involving children under the age of 18. Sensi was prohibited from accessing or possessing sexually explicit material involving minors. (A: 505)

35

Sensi was advised of his right to appeal, which must be exercised within 14 days, and of his right to counsel for that appeal. (A: 506)

ARGUMENT

I.

THE DISTRICT COURT ERRED IN DETERMINING
THAT THE EXECUTED WARRANT AUTHORIZED
THE SEIZURE AND SEARCH OF THE LOCKED
BLACK BAG, BECAUSE THE WARRANT AUTHORIZED
THE SEIZURE AND/OR SEARCH OF NO CONTAINER
WHATSOEVER, MUCH LESS A LOCKED ONE

The June 8, 2010 order denying suppression of physical evidence should be reversed, and the case remanded for a determination of whether, *inter alia,* Sensi consented to the search of the locked black bag. In addition, the judgment should be reversed, because Sensi entered into the Plea Agreement pursuant to Fed. R. Crim P. 11(a)(2), upon condition that he could withdraw the guilty pleas if this Court reversed the order denying suppression.

The evidence was undisputed that Det. Broughton seized the locked black duffle bag from Sensi's home, transported it to the sheriff's office, broke the lock with a bolt-cutter, removed the videocassettes from the bag and then watched them, without ever obtaining a separate search warrant to do any of the same.

Sensi contended that the search of the black bag required a "separate" warrant. The Government argued in its filings and before the hearing that the

36

black bag was covered by the "plain language" of the executed warrant, and within

its "four corners", an issue the Court should resolve without a hearing.

 After the hearing, the District Court agreed *in toto* with the Government:

> "I agree with the Government that the scope of the search warrant
> is for me to determine, not for credibility of witnesses to determine.
> It's an issue of my examining the language of the search warrant
> and determining whether it covers anything other than computer
> documents. And I hold on the basis of the language in it that
> paragraph 1 [of the warrant] is broad enough and my attention was
> also called to paragraph 4. I'm relying mainly on paragraph 1 as
> being enough to cover the documents which are in question here as
> having been seized. . . . So the black duffle bag would have to be
> covered . . . with respect to the language of the search warrant"

(A:291-92)[45]

 It was an error of law for the District Court to determine that the locked

black bag was "covered [by the] language of the search warrant" on the simple

ground that it wasn't: there is nothing in the search warrant authorizing the seizure

and/or search of any locked container, much less a locked one.

----

[45] Paragraphs 1 and 4 of the search warrant authorize the seizure of:

> "1. Images, movies, or visual depictions of sexual conduct or sexual
> performance by a child or children . . . ."
>
>    *  *  *  *  *
>
> "4. Computer storage media and the digital content to include but not
> limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks
> or other magnetic, optical or mechanical storage which can be accessed
> by computers to store or retrieve data or images of child pornography".

We now usurp the Government's argument below and flip it, and submit that the warrant's "plain language" in fact establishes that it gave no authority whatsoever for the seizure and/or search of the locked black bag.

Moreover, the only *Fourth Amendment* issue before this Court is the one decided by the District Court, whether the warrant authorized the seizure and search of the locked black bag, and its disposition is as undemanding as we state: anyone can read the search warrant and see that it does not authorize the seizure and search of any container, much less a locked one.

The simplicity and persuasiveness of the argument dictate that we limit our *Fourth Amendment* briefing to two straightforward propositions: (i) the particularity requirement of the Warrant Clause in the *Fourth Amendment* means that nothing can be seized nor searched pursuant to a properly particularized warrant, unless it is particularized in the warrant, and locked containers were not particularized in the warrant here, and (ii) as Sensi urged below, Det. Broughton was required to obtain a separate search warrant for the locked black bag before breaking its lock and examining its contents (assuming its seizure was authorized).

Thus, we don't challenge the warrant on this appeal, only how it was executed. *See*, *United States v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir. 2012) (the *Fourth Amendment* is offended where agents executing a perfectly

38

particularized warrant "exceed[ ] the authority that they had been granted by the magistrate judge").

Accordingly, the June 8, 2010 order denying suppression of physical evidence should be reversed, and the case remanded for a determination of whether, *inter alia,* Sensi consented to the search of the bag.  In addition, the judgment should be reversed, because Sensi entered into the Plea Agreement pursuant to Fed. R. Crim P. 11(a)(2), upon condition that he could withdraw the guilty pleas if this Court reversed the order denying suppression.

A.    It Is Undisputed That Det. Broughton Searched The
      Black Bag Without Obtaining A New Search Warrant

It is undisputed that Det. Broughton seized the locked black duffle bag from Sensi's home, transported it to the sheriff's office, broke the lock, removed the videocassettes from the bag and then watched them, without ever obtaining a search warrant to do the same.

It is also undisputed that these videocassettes are the depictions that underlie counts 1 and 2 of the superseding indictment.[46]

---

[46] Det. Broughton testified that the videocassettes underlying counts 1 and 2 were recovered from the locked black bag, and that the videocassettes underlying counts 3 and 4 were recovered from the red duffle bag.  (A: 167, 173, 178, 220)

It is also undisputed that Det. Broughton did not know that the black bag contained child pornography when he removed it from Sensi's home to the sheriff's office. (A: 220)

B.    The Standard of Review is *de Novo*

As the Government argued below, and as the District Court determined, the issue of whether the seizure and search of the locked black bag was "covered [by the] language of the search warrant", as the District Court found it was, presented an issue of law.

Issues of law presented on the appeal of an order denying suppression are reviewed *de novo*. *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012), citing *United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004); *United States v. George*, 975 F.2d 72, 74 (2d Cir. 1992) (whether warrant met particularity requirement presents an question of law, "that we must decide *de novo*").

C.    The Particularity Requirement Requires
      That A Search Be Confined To The Terms
      And Limitations Of The Warrant Authorizing It

The Warrant Clause of the *Fourth Amendment* to the Constitution of the United States provides (emphasis supplied):

>   "no Warrants shall issue, but upon probable cause, supported by
>   Oath or affirmation, and *particularly describing the* place to be
>   searched, and the persons or *things to be seized*".

40

The requirement that the warrant particularize the "things to be seized" and the "place to be searched" lies at the heart of the protections afforded by the *Fourth Amendment.  United States v. Rosa,* 626 F.3d 56, 61 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 2424 (2012) (the particularly requirement of the Warrant Clause is a "core protection" of the *Fourth Amendment*);  *Stanley v. Georgia*, 394 US 557 (1969) (J. Stewart, concurring) (the particularity requirement of the Warrant Clause is the "most basic" of the *Fourth Amendment's* guarantees).

The primary purpose of the requirement that the thing to be seized be described particularly by a neutral magistrate is to protect against general searches by overzealous agents of law enforcement.  *United States v. Shi Yan Liu,* 239 F.3d 138, 140 (2d Cir. 2000), *cert. denied*, 534 U.S. 816 (2001) ("[e]liminating general searches was the basic impetus for the *Fourth Amendment*'s Warrant Clause"), *citing Maryland v. Garrison,* 480 US 79, 84 (1987)[47]

In *Shi Yan Liu*, this Court noted that general searches "have variously been described as "'wide-ranging exploratory searches'", and "'indiscriminate rummagings'"  (*Id*.) (citations omitted).  *See also United States v. George,* 975

---

[47] In *United States v. Young,* 745 F.2d 733, 759-60 (2d Cir. 1984), *cert. denied,* 470 US 1084 (1985), this Court stated that the particularity requirement "serves three related purposes: preventing general searches, *preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization*, and preventing the issuance of warrants without a substantial factual basis) (emphasis added).

41

F.2d 72, 74 (2d Cir. 1992) (the general warrant allowed state agents to "ransack" a person's belongings).

The Court further observed the "enduring aversion of Anglo-American law [toward] general searches", which were "much-reviled throughout the colonial period", and long deemed to be "especially pernicious", as they "violate fundamental rights." (*Id.*) (citations omitted). *See also*, *Go-Bart Importing Co. v. United States,* 282 US 344, 357 (1931) (the Warrant Clause is directed at preventing general searches: "Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constitutions or statutes of every State in the Union. The need of protection against them is attested alike by history and present conditions."") (citation omitted); *George,* 975 F.2d at 74 (the general warrant "has long been considered abhorrent to fundamental notions of privacy and liberty").

The Warrant Clause means what it says: nothing may be seized if it is not described particularly in the warrant. *Marron v. United States,* 275 US 192, 196 (1927) (the particularity requirement . . . "*prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant*") (emphasis supplied); *George,* 975 F.2d 72 at 76 (by affording any discretion to the officer executing the warrant, "the safeguard of having a magistrate determine the scope of the search is lost");

42

*United States v. Matias,* 836 F.2d 744, 747 (2d Cir. 1988) ("[a] search must be

confined to the terms and limitations of the warrant authorizing it");  *United States*

*v. Dzialak*, 441 F.2d 212, 216 (2d Cir.), *cert. denied,* 404 U.S. 883 (1971) ("if

something is not described in the warrant, then it cannot be seized"); *United States*

*v. Hernandez*, 2010 US Dist. LEXIS 719 (SDNY 2010) (the particularity

requirement aims to "cabin" the discretion of the executing agents).  *See also,*

*United States v. Ross,* 456 US 798, 824 (1982) ("Just as probable cause to believe

that a stolen lawnmower may be found in a garage will not support a warrant to

search an upstairs bedroom, *probable cause to believe that undocumented aliens*

*are being transported in a van will not justify a warrantless search of a suitcase*")

(emphasis supplied);  *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (plurality

opinion) (the particularity requirement ensures that even searches by warrant

"should be as limited as possible" to avoid becoming a license for "a general,

exploratory rummaging in a person's belongings"). .

Here, Det. Bougton's overzealousness converted his authority to seize

limited, particularized items, bestowed upon him by a neutral magistrate, into his

own general, exploratory search, by taking the bag from Sensi's home, by

"ransacking " it by breaking its lock, and by literally "rummaging" through its contents, including by viewing the videotapes he recovered therein.[48]

The "plain language" of the warrant shows the reverse of what the Government persuaded the District Court that it shows: it shows that all this was beyond the authority that the neutral magistrate had bestowed upon him.

*United States v. Dzialak*, 441 F.2d 212 (2d Cir.), *cert. denied,* 404 U.S. 883 (1971) is a case on point. There, law enforcement had reason to believe that defendant was knowingly hoarding stolen goods, and a warrant issued for the seizure in his home of labeled pairs of hosiery, a carton of binoculars, and a Schwinn bicycle. The executing officers recovered items particularized in the warrant, and seized twenty-one Timex watches as well, which resulted in defendant's conviction for unlawful possession of the watches.

Relying on the long-established rule articulated in *Marron* that nothing should be left to the discretion of the officers executing the warrant, 275 US at 196, this Court held that suppression should have been granted, and reversed the conviction. 441 F.2d at 217.

Here, Det. Broughton not only seized the bag, but he searched it as well, unlike the officers in *Dzialak,* who only seized property. Application here of the

---

[48] That the detective's rummaging became "a general, exploratory rummaging in a person's belongings" is illustrated by his discovery of many items that Sensi apparently wished to keep private from others, which surely were not targeted by the warrant, including a 2001 New York Yankees preview magazine and literature from the New York Opera House. (A:173)

simple reasoning in *Dzialak* means that the executed warrant did not give Det. Broughton the authority to seize, much less search the locked black bag.

D.   Det. Broughton Lacked Authority To Break The Lock
     On The Bag And To View The Videocassettes Discovered
     Therein Without First Obtaining A Separate Warrant

As argued, Det. Broughton lacked the legal authority to seize the locked black bag by removing it from Sensi's home to the sheriff's office.

But even assuming, *arguendo*, that the seizure was lawful, Det. Broughton still had no legal authority to search it (by breaking its lock and viewing the images stored on the videocassettes contained therein) without first obtaining a warrant authorizing the same.

A lawfully seized container may be opened only pursuant to either a search warrant or one of the well-recognized exceptions to the warrant requirement. *Horton v. California*, 496 US 128, 141 n. 11 (1990), *citing Smith v. Ohio*, 494 U.S. 541, 542 (1980); *United States v. Place*, 462 U.S. 696, 701 (1983); *Arkansas v. Sanders*, 442 U.S. 753 (1979); *United States v. Chadwick*, 433 U.S. 1 (1977); *United States v. Van Leeuwen*, 397 U.S. 249 (1970); *Ex parte Jackson*, 96 U.S. 727, 733 (1878), and *Colorado v. Bertine*, 479 U.S. 367 (1987); *United States v. Ross*, 456 U.S. 798 (1982).[49]

---

[49]  Other cases relied upon by Sensi below to support the rule include:  *Walter v. United States,* 447 US 649 (1980) (plurality opinion) (even where their criminal nature was described on the

Albeit in a different factual setting, this Court has cited the rule:

> "'Where law enforcement authorities have probable cause to
> believe that a container holds contraband or evidence of a crime,
> but have not secured a warrant, the [Supreme] Court has interpreted
> the [Fourth] Amendment to permit seizure of the property, *pending
> issuance of a warrant to examine its contents*, if the exigencies of
> the circumstances demand it or some other recognized exception to
> the warrant requirement is present.' *United States v. Place*, 462
> U.S. 696, 701, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983); *see also
> United States v. Jacobsen*, 466 U.S. 109, 121-22, 80 L. Ed. 2d 85,
> 104 S. Ct. 1652 and nn.20-21 (1984); *Texas v. Brown*, 460 U.S.
> 730, 749-50, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983) (Stevens, J.,
> concurring) (container may be seized if there is probable cause to
> believe it contains contraband, but container may not be searched
> without warrant issued by neutral magistrate); *Arkansas v.
> Sanders*, 442 U.S. 753, 761-62, 61 L. Ed. 2d 235, 99 S. Ct. 2586
> (1979).

*United States v. Martin*, 157 F.3d 46, 53 (2d. Cir. 1998) (emphasis added; other

citations omitted).[50]

---

outside of the containers storing films, the Government's screening of the films was a search, and
suppression was required: there was no warrant, no consent and no exigent circumstances);
*United States v. King,* 227 F.3d 732, 753 (6th Cir. 2000) (evidence which exceeded scope of
warrant suppressed); *United States v. Carey,* 173 F.3d 1268, 1276 (10th Cir. 1999) (same);
*United States v. Fuccillo,* 808 F.2d 173, 177-78 (1st Cir. 1987) (same).

[50] The Government admitted in papers opposing Sensi's motion that Det. Broughton did not
have probable cause to seize the locked black bag. ("Broughton . . . did not want to seize the
black back {sic} if it didn't contain anything pertinent to his investigation so he specifically
asked Sensi if he had a key to the bag") (A: 66) Also, Det. Broughton admitted that he did not
suspect that Sensi produced child pornography when he left Sensi's home. (A: 220) But even
assuming, *arguendo,* that probable cause existed to seize the locked black bag, the rule set out in
the text states clearly that the detective still needed to obtain an additional search warrant before
breaking its lock and viewing the videocassettes.

No exception to the warrant requirement applies on this record before this Court at this time. Thus, this rule shows that Det. Broughton's failure to obtain a separate search warrant authorizing him to break the lock on the black bag and to view its contents (by viewing the images stored on the videocassettes contained therein) violated Sensi's *Fourth Amendment* rights.[51]

E.     Conclusion

For all of these reasons, the June 8, 2010 order denying suppression of physical evidence should be reversed, and the case remanded for a determination of whether, *inter alia,* Sensi consented to the search of the locked black bag. In addition, the judgment should be reversed, because Sensi entered into the Plea Agreement pursuant to Fed. R. Crim P. 11(a)(2), upon condition that he could withdraw the guilty pleas if this Court reversed the order denying suppression.

---

[51]  The only exception to the warrant requirement to which the Government has pointed is consent, an issue that the District Court expressly declined to address: "I cannot really find, make any finding with respect to consent with respect to the black duffle bag which was locked. I find that there are credibility issues and I cannot really resolve those credibility issues as to what [Sensi] said or didn't say with respect to that black duffle bag". (A: 292)  Given the District Court's declination to make findings of fact regarding consent, an issue necessarily resolved only by findings of fact, and in the absence of full-briefing by the parties as to proposed findings of fact and conclusions of law, the record is, obviously, not amenable to an adjudication of the consent issue by this Court at this time.

II.

## THE PLEA AGREEMENT LACKED CONSIDERATION BECAUSE THE GOVERNMENT OFFERED NOTHING IN EXCHANGE FOR SENSI'S <u>PLEAS THAT HE WOULD NOT HAVE HAD HE GONE TO TRIAL</u>

Because the Plea Agreement states (with emphasis) that the "<u>only</u>" promise that the Government makes to induce Sensi to enter into the Agreement is to allow him to appeal the order denying suppression, and because this consideration was wholly illusory, the Plea Agreement is void for lack of consideration, and the judgment should be reversed.

In the first paragraph of the Plea Agreement the Government boldly states (emphasis in original) (A: 321):

> "the <u>only</u> promise that the Government is entering into for the purposes of this plea is to permit the defendant to reserve his right to appeal the Court's June 8, 2010 ruling relating to the suppression hearing".[52]

The Government thus admits that it made but one, and only one promise to Sensi in exchange for his guilty pleas to all four counts. Turns out, that one promise was illusory.

The sentence of 85 years that the Government recommended, and that the District Court imposed, is the maximum the law allows under all four counts. It is obviously the same sentence Sensi would have received after trial if he was

---

[52] The Plea Agreement is at A: 321-330.

48

convicted on all four counts.   Had that occurred, then Sensi would have had his

right to appeal the District Court's order denying suppression anyway, and he'd

have no need for the conditional plea that the Government offered him -- and he

definitely would have received a shorter sentence had he been acquitted on even

one count.

It follows that the Government's "promise" to allow defendant his right to

appeal the suppression order in exchange for his guilty pleas on all the counts was

wholly illusory, and that in fact **Sensi received nothing** in exchange for his four

guilty pleas -- **except the maximum allowable sentence under the law**.  The

Plea Agreement is thus void for lack of consideration, and unenforceable, and the

judgment must be reversed.[53]

This Court applies principles of contract law to interpret plea agreements.

*United States v. Salcido-Contreras,* 990 F.2d 51, 52 (2d Cir.), c*ert. denied,* 509 US

931 (1993) (per curiam).  Since contracts are not valid unless supported by

adequate consideration, it follows that "a guilty plea can be challenged for

contractual invalidity based on a lack of consideration".  *United States v. Brunetti,*

---

[53]  Indeed, <u>Sensi had nothing to lose by going to trial</u>.  If convicted on every count, then he surely
would have received the identical sentence.  Yet if acquitted on any one count, then he would be
serving a substantially shorter sentence than he is now after having entered four guilty pleas.

376 F.3d 93 (2d Cir. 2004) (per curiam), *agreeing with United States v. Parrilla-Tirado,* 22 F.3d 368, 371 (1st Cir. 1994).[54]

Here, as noted, the Government set out in the first paragraph of the Plea Agreement that it offered no promises to induce Sensi to enter the agreement except one, the right to appeal the order denying suppression. (A: 321) The Agreement elsewhere underscores the Government's point, literally: "[t]he defendant understands that there are **no** other, promises, agreements, or conditions that bind the Government in this case". (A: 326) (emphasis in original)

The Government also made sure that Sensi knew that he could expect nothing by way of standard consideration offered for guilty pleas: "the Government has made no promises or representations of any kind with respect to whether defendant has accepted responsibility for his conduct". (A: 323) The Government also states that "in the Government's view, the applicable term of incarceration under the Guidelines is ninety-five (95) years of incarceration". (A: 323)

All of these provisions serve to underscore what the Plea Agreement stated in the first place anyway, that the Government extended no consideration to Sensi

---

[54] In *United States v. Reap*, 391 Fed. Appx. 99, 102 (2d Cir. 2010), *cert. denied,* 131 S.Ct. 3040 (2011) (summary order), this Court stated that this right of an accused is "now well-settled in this Circuit".

50

to induce him to proffer his guilty pleas, except its agreement to allow Sensi to appeal the order denying suppression.

But this is a right that Sensi would have had anyway had he gone to trial and been convicted on all four counts. It seems ironic that if Sensi had gone to trial and been acquitted on any one count, then his sentence would have been far shorter than the sentence imposed when he offered up guilty pleas. *Cf., Corbitt v. New Jersey*, 439 U.S. 212, 218-20 (1978) (a State may encourage a guilty plea by offering substantial benefits in return for the plea, such as "the possibility or certainty . . . of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty . . . .") (internal citation and punctuation omitted) (emphasis omitted).

Importantly, we note also that the Court gave Sensi cause for hope at the change of plea hearing. The Court informed Sensi that "we do have a reduction in the sentencing guidelines ranges for . . . entering a plea of guilty and accepting responsibility" and asked Sensi specifically:

> "So you understand there may be some benefit to you by this guilty plea?
>
> "THE DEFENDANT:   I understand, Your Honor."

(A: 377)  The Government cannot reasonably deny that this portion of the colloquy at least in part induced Sensi's guilty pleas, entered moments later.

51

Because the Government admitted that its promise to allow Sensi to appeal the suppression order is the only consideration extended to Sensi in the Plea Agreement, and because this consideration was wholly illusory, the Plea Agreement is void for lack of consideration, and the judgment should be reversed.

III.

### THE 85 YEAR SENTENCE OF IMPRISONMENT, THE MAXIMUM ALLOWABLE UNDER THE LAW FOR THE CRIMES TO WHICH SENSI PLED GUILTY, WAS SUBSTANTIVELY UNREASONABLE

The sentence imposed by the District Court of 85 years imprisonment, the maximum allowable under the law for the crimes to which Sensi pled guilty, and a Guidelines sentence, is substantively unreasonable, and the judgement should be reversed.

This Court should reach the issue of the substantive reasonableness of the sentence, whether it reverses or affirms on the grounds set out above at Points I and/or II (or any other ground). In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), this Court ordered the remand of the case for resentencing on one ground, but nevertheless determined that it should reach the issue of whether the vacated sentence was substantively unreasonable:

It is especially appropriate to reach the matter of substantive unreasonableness now because we have found and identify here certain serious flaws in U.S.S.G. § 2G2.2 -- issues which are squarely presented on this appeal and which must be dealt with by

52

the district court at resentencing. Addressing both squarely presented issues on this appeal[55] is also in the interest of judicial economy. *See, e.g., Cameron v. City of New York*, 598 F.3d 50, 54 (2d Cir. 2010).

The same issues are presented here: judicial economy would be served if the Court addressed substantive reasonableness even if it reversed for any other reason, and the application of increases for the specific offenses characteristics at U.S.S.G. § 2G2.2 are factors that the Court upon remand will have to weigh in resentencing.

Appellate courts must review sentences for "reasonableness", amounting to an abuse-of-discretion standard. *Gall v. United States,* 552 US 38, 51 (2007). This review "provides a backstop for those few cases that . . . would . . . damage the administration of justice because the sentence imposed was shockingly high, shockingly low or otherwise unsupportable as a matter of law". *United States v. Rigas,* 583 F.3d 108, 123 (2d Cir. 2009).

No Guidelines sentence is presumed reasonable. *United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir. 2006).

District courts are directed to consider the factors set out at 18 USC § 3553(a) in fashioning a sentence that is "sufficient but not greater than necessary" to comply with the purposes of sentencing set out at 18 USC § 3553(a)(1)-(7). *See*

---

[55] The two issues being the first one for which the Court remanded for resentencing, and whether the vacated sentence was substantively unreasonable.

*generally*, *Dorvee,* 616 F.3d at 184 ("even a statutory maximum sentence must be analyzed using the § 3553(a) factors).

An appellate court reviewing a sentence for reasonableness "may consider whether a factor relied on by a sentencing court can bear the weight assigned to it". *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir. 2008) (*en banc*).

Here, the District Court relied too much on the factor set out at § 3553(a)(4), the Sentencing Guidelines, which has been its "Bible", and "are a good example of trying to carry out the goals of 3553", despite the presence of six other factors set out at § 3553(a)(1)-(7). (A:501)

As the PSR acknowledges, the Guidelines sentence was over the statutory maximum until it was reduced to meet the statutory maximum. Moreover, the Guidelines calculation that produced that result is generated by the USSG § 2G2.1 enhancements which are much like the at USSG § 2G2.2, which this Court saw fit to scrutinize (and advised to apply with great care) in *Dorvee,* 616 F. 3d at 186. ("the USSG § 2G2.2 sentencing enhancements routinely result in Guidelines projections near or exceeding the statutory maximums").

This admittedly Guidelines generated sentence suffers from the same taint as the sentence in *Dorvee.*

The record shows further that the District Court also placed too little reliance on § 3553(a)(1), Sensi's history and characteristics, a 55-year old man with no

54

prior convictions, and too little reliance on § 3553(a)(6), "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct".

Like the Sensi prosecution, the *Culver and Perlitz*[56] prosecutions, when active, received much press in Connecticut between 2008 and 2012.

Culver was the mother of MV#1, who like Sensi abused her sexually and participating in recording it, and who, was surely in as much a position of trust to the victim as mankind can fathom, unlike Sensi, who was in no position of trust at all.

Yet the day before Sensi was sentenced Culver was sentenced to 8 years imprisonment. We submit that the patent sentencing disparity between these defendants with similar records who have been found guilty of similar conduct fails to promote respect for the law.[57]

Similarly, the defendant in *Perlitz* was 40 years old, and his crimes were no less heinous than Sensi's (except they weren't recorded), and likely involved as many as fifteen victims (he admitted to 8). Yet in December, 2010, Perlitz was sentenced to nineteen-and-one-half years imprisonment.

---

[56] *United States v. Douglas Perlitz,* 3:09-cr-207 (JBA) (D. Conn), and *United States v. Laura Culver,* 3:09-cr-00077 (WWE) (D. Conn).

[57] Nor does Sensi's additional guilt for the crimes in Nicaragua warrant the over 10:1 ratio between each of their sentences.

Again, a huge sentencing disparity between defendants with similar records who have been found guilty of similar conduct is brought to the attention of the same public, in and about the same time that Sensi is sentenced to 85 years.

People who contemplate these sentencing disparities, between Culver and Perlitz on the one hand, and Sensi on the other, and such people exist indeed, are surely bewildered by this strange incident of the criminal justice system.

District courts are directed to consider the factors set out at 18 USC § 3553(a) in fashioning a sentence that is "sufficient but not greater than necessary" to comply with the purposes of sentencing as set out at 18 USC § 3553(a)(1)-(7). The sentence here is substantively unreasonable as the District Court gave too great weight to some of the § 3553(a) factors and too little to others. The sentence is also substantively unreasonable in that greater than necessary to serve the purposes of sentencing.

<u>CONCLUSION</u>

For the reasons stated at Point I, the June 8, 2010 order denying suppression of physical evidence should be reversed, and the case should be remanded for a determination of whether, *inter alia,* Sensi consented to the search of the locked black bag. In addition, the judgment should be reversed, because Sensi entered into the Plea Agreement pursuant to Fed. R. Crim P. 11(a)(2), upon condition that he could withdraw the guilty pleas if this Court reversed the order denying suppression.

For the reasons stated at Point II, the judgment should be reversed.

For the reasons stated at Point III, the sentence should be vacated, and the case remanded for resentencing.

Dated:    October 5, 2012
          New York, New York

                              Respectfully submitted,


                              <u>s/AndrewFreifeld</u>
                              Law Office of Andrew H. Freifeld
                              By: Andrew H. Freifeld
                              Attorneys for Defendant-Appellant
                                 Edgardo Sensi
                              30 Vesey Street, 6th Floor
                              New York, New York 10007
                              (212) 240-9406

57

## CERTIFICATE COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13, 187 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point font size, using Times New Roman style.


                          s/Andrew Freifeld
                             Andrew Freifeld
                         Attorney for Appellant
                            Edgardo Sensi

Dated: October 5, 2012
        New York, New York

# SPECIAL APPENDIX

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Judgment, dated January 31, 2012, Appealed From .. SPA-1

SPA-1

AO245b (USDC-CT Rev. 9/07)

UNITED STATES DISTRICT COURT

Page 1

District of Connecticut

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| v. | CASE NO. *3:08CR253(WWE)* |
| | USM NO: 17211-014 |
| Edgardo Sensi | |
| | David Fine |
| | United States Attorney |
| | *Krishna Patel* |
| | Assistant United States Attorney |
| | |
| | *Gerald Harmon* |
| | Defendant's Attorney |

**THE DEFENDANT:** pled guilty to counts **1s, 2s, 3s & 4s of the Superseding Indictment.**

Accordingly the defendant is adjudicated guilty of the following offenses:

| Title & Section | Nature of Offense | Offense Concluded | Counts |
|---|---|---|---|
| 18 U.S.C. Sec. 371 | Conspiracy to Produce Child Pornography | /2005 | 1s |
| 18 U.S.C. Sec. 2251(a) | Production of Child Pornography in the United States | /2005 | 2s |
| 18 U.S.C. Sec. 2423(e) | Illegal Sexual Conduct in Foreign Place | /2005 | 3s |
| 18 U.S.C. Sec. 2251(c)(1) | Production of Child Pornography Outside the United States | /2005 | 4s |

The following sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**IMPRISONMENT**
The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for 5 years on count 1s, 20 years on count 2s, 30 years on count 3s and 30 years on count 4s to be served consecutively for a total effective sentence of 85 years or 1020 months.
**SUPERVISED RELEASE**

Upon release from imprisonment, the defendant shall be on supervised release for a total term of Life concurrent on all counts. The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:

(1) The defendant shall avoid all contact with any victims in the subject offenses of conviction.
(2) The defendant shall participate in sex offender treatment as approved by the United States
Probation Office, and shall abide by the policies and procedures of the program, which may include polygraph testing.
(3) The defendant is not to use a computer, Internet-capable device, or similar electronic device to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. The defendant shall consent to the use of any computer program which shall monitor suspect computer use on any computer owned or controlled by the defendant. The program(s) used will be designed to identify, for the Probation Office, only the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual nature ("Suspect Computer Use"). Suspect Computer Use shall be identified by the installed program and/or the Probation Office through the screening of the defendant's computer usage for certain key words, phrases, and images. The defendant shall pay all or a portion of costs associated with computer monitoring based on the defendant's ability to pay as determined by the probation officer.
(4) The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the probation officer.

**SPA-2**

AO245b (U... Case 3:08-cr-00253-WWE   Document 167   Filed 02/02/12   Page 2 of 4

Page 2

(5) The defendant shall submit his/her person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

(6) The defendant shall participate in a program approved by the Probation Office for mental health treatment. The defendant shall pay all, or a portion of the costs associated with treatment, based on the defendant's ability to pay as determined by the probation officer.

(7) The defendant shall provide the probation officer with access to requested financial information.

(8) The defendant shall not possess a firearm or other dangerous weapon.

(9) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

(10) The defendant shall not loiter around playgrounds, schools, arcades or any other placed where children under the age of 18 congregate. The defendant shall not associate with or have contact with convicted sex offenders or those considered inappropriate by the United States Probation Office because of a connection to sexual abuse of minors or sexually explicit materials involving minors, unless as part of an approved counseling group.

(11) The defendant is prohibited from holding any position of authority or guidance over children or youth groups involving individuals under the age of 18.

(12) The defendant is prohibited from accessing or possessing sexually explicit materials involving minors.

**CRIMINAL MONETARY PENALTIES**

The defendant must pay the total criminal monetary penalties under the schedule of payments (as follows) or (as noted on the restitution order).

**Special Assessment:**     $400.00

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment, are paid.

SPA-3

Page 3

**JUDICIAL RECOMMENDATION(S) TO THE BUREAU OF PRISONS**

Incarceration at a prison facility along the east coast capable of preventing retaliation.

**The defendant is remanded to the custody of the United States Marshal.**

1/31/2012 _____
Date of Imposition of Sentence

_____/s/_____
Warren W. Eginton
Senior United States District Judge
Date: 2/1/2012

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____, with a certified copy of this judgment.

_____
Joseph P. Faughnan
United States Marshal

By _____
Deputy Marshal

*CERTIFIED AS A TRUE COPY
ON THIS DATE _____
ROBERTA D. TABORA, Clerk
BY: _____
     Deputy Clerk*

AO245b (USDC-CT Rev 8/02)   Case 3:08-cr-00253-WWE   Document 167   Filed 02/02/12   Page 4 of 4

Page 4

## CONDITIONS OF SUPERVISED RELEASE

In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:

### MANDATORY CONDITIONS

■ (1)   The defendant shall not commit another federal, state or local offense;

■ (2)   The defendant shall not unlawfully possess a controlled substance;

☐ (3)   The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. section 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant;

■ (4)   The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance.

☐ (5)   If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine;

☐ (6)   The defendant shall (A) make restitution in accordance with 18 U.S.C. sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and (B) pay the assessment imposed in accordance with 18 U.S.C. section 3013;

■ (7)   (A)   In a state in which the requirements of the Sex Offender Registration and Notification Act (see 42 U.S.C. §§ 16911 and 16913) do not apply, a defendant convicted of a sexual offense as described in 18 U.S.C. § 4042(c)(4) (Pub. L. 105-119, § 115(a)(8), Nov. 26, 1997) shall register the address where the defendant will reside and any subsequent change of residence to the probation officer responsible for supervision, and shall register as a sex offender in any State where the person resides, is employed, carries on a vocation, or is a student; or

   (B)   In a state in which the requirements of Sex Offender Registration and Notification Act apply, a sex offender shall (i) register, and keep such registration current, where the offender resides, where the offender is an employee, and where the offender is a student, and for the initial registration, a sex offender also shall register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence; (ii) provide information required by 42 U.S.C. § 16914; and (iii) keep such registration current for the full registration period as set forth in 42 U.S.C. § 16915;

■ (8)   The defendant shall cooperate in the collection of a DNA sample from the defendant.

While on supervised release, the defendant shall also comply with all of the following Standard Conditions:

### STANDARD CONDITIONS

(1)   The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;

(2)   The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

(3)   The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4)   The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);

(5)   The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

(6)   The defendant shall notify the probation officer at least ten days prior to any change in residence or employment, or if such prior notification is not possible, then within five days after such change;

(7)   The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;

(8)   The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;

(9)   The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(10)  The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

(11)  The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12)  The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(13)  The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;

(14)  The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

The defendant shall report to the Probation Office in the district to which the defendant is released within 72 hours of release from the custody of the U.S. Bureau of Prisons. Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision and impose a term of imprisonment, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____

Defendant                                                        Date


_____

U.S. Probation Officer/Designated Witness                Date