# 12-0565-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

EDGARDO SENSI,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

### PRO-SE SUPPLEMENTAL BRIEF
### AND APPENDIX 2A (Supplemental exhibits)

```
Edgardo Sensi
Federal# 17211-014
United States Penitentiary Tucson
P.O. Box 24550
Tucson, Arizona 85734
```

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................... ii

JURISDICTIONAL STATEMENT ............................... v

A. District Court Jurisdiction ........................ v

B. Court of Appeals Jurisdiction ...................... v

C. Timeliness of Appeal ............................... vi

D. Appeal from Final Judgment ......................... vi


STATEMENT OF ISSUES PRESENTED FOR REVIEW ............... 1

INCORPORATION BY REFERENCE ............................ 2

ARGUMENT .............................................. 4

CONCLUSION ............................................ 25

CERTIFICATE OF SERVICE ................................ 26

APPENDIX 2A ........................................... 28

I. <u>THE DISTRICT COURT ERRED IN FAILING TO FIND
THAT THE SEIZURE OF THE LOCKED BLACK BAG
EXCEEDED THE SCOPE OF THE SEARCH WARRANT OR
WAS OTHERWISE A LAWFUL SEIZURE</u>.


II. <u>THE DISTRICT COURT ERRED IN FAILING TO GRANT
APPELLANT'S MOTION TO CONTINUE SENTENCING</u>.

TABLE OF AUTHORITIES

Cases

- <u>Arizona v. Evans</u> 541 US 1, 131 LED 2d 34, 115 SCT 1185
(1995); referenced page 4

- <u>Bivens v. Six unknown named agents of The Federal Bureau of
Narcotics</u>, 403 US 368 29 LED 2d 619, 91 SCT 1999 (1971);
referenced page 6

- <u>Crawford v. Washington</u> 541 US 36, 158 LED 2d 177, 124 SCT
1354 (2004); referenced page 21

- <u>Douglas v. Alabama</u> 380 US 415, 13 LED 2d 934, 85 SCT 1074
(1965); referenced page 20

- <u>Gersten v. Sentauski</u> 426 F.3d 588 (2d Cir 2005); referenced
on page 22

- <u>Hollis v. Smith</u> 571 F.2d 685 (2nd Cir 1978); referenced on
page 22

- <u>Horton v. California</u> 496 US 128, 110 SCT 2301, 110 LED 2d
112 (1990); referenced page 11

- <u>Maryland v. Garrison</u> 480 US 79, 107 SCT 1013, 94 LED 2d 72
(1987); referenced page 8

- <u>Ornelas v. U.S.</u> 517 US 690, 116 SCT 1657, 134 LED 2d 911
(1976); referenced page 6

- <u>Paintor v. Texas</u> 380 US 400, 130 LED 2d 923 85 SCT 1065
(1965); referenced page 20

- <u>Schneck v. Bustamonte</u> 412 US 218, 93 SCT 2041, 36 LED 2d 854
(1973); referenced page 13

- <u>Wray v. Johnson</u> 202 F.3d 515 (2d Cir 2000); referenced on
page 21

- <u>United States v. Bonfiglio</u> 713 F.2d 932 (2nd Cir 1983);
referenced page 7

- United States v. Colombo 909 F.2d 711 (2nd Cir 1990); referenced page 21

- United States v. Dhinsa 171 F.3d 721 (2nd Cir 1998); referenced page 6

- United States v. Dunlay 584 F.2d 6 (2nd Cir 1986); referenced page 7

- United States v. Fields 113 F.3d 313 (2nd Cir 1997); referenced page 11

- United States v. George 975 F.2d 72 (2nd Cir 1992); referenced page 8

- United States v. Hamilton 334 F.3d 170 (2d Cir 2003); referenced page 23

- United States v. Harrell 268 F.3d 141 (2nd Cir 2001); referenced page 6

- United States v. Hagg 278 F.3d 44 (2nd Cir 2002); referenced on page 11

- United States v. Isiofia 370 F.3d 226 (2nd Cir 2004); referenced page 13

- United States v. Laljie 184 F.3d 1801 (2nd Cir 1999); referenced page 20

- United States v. Leon 486 US 897, 82 LED 2d 677, 104 SCT 3401 (1984); referenced page 4

- United States v. Lewis 386 F.3d 475 (2d Cir 2004); referenced page 13

- United States v. Pughe 441 Fed. Appx. 776 (2d Cir 2011); referenced page 12

<u>Statutes</u>

Federal Rules of Evidence: 901


18 USC § :      2

18 USC § :      371

18 USC § :      2251(a)

18 USC § :      2251(c)(1)

18 USC § :      2423(c)


<u>Appendix 2A - supplemental exhibits</u>

      (Please note that exhibits numbered "A-#" are found in the "Appendix - Volume 1 or 2"; supplemental exhibits are numbered "A2A-#")


- (A2A-1): Letter from Marsha Ewing, Clerk of the Circuit Court, Florida, dated August 23, 2012

- (A2A-2): Deposition of November 19, 2008, pg. 43

- (A2A-3): Deposition of November 19, 2008, pg. 44, lns. 1-18

- (A2A-4): Deposition of November 19, 2008, pg. 45, lns. 9-17

- (A2A-5): Deposition of November 19, 2008, pg. 46, lns. 8-20

- (A2A-6): Deposition of November 19, 2008, pg. 47

- (A2A-7): Deposition of November 19, 2008, pg. 67, lns.15-25

- (A2A-8): Deposition of November 19, 2008, pg. 68, lns. 1-18

- (A2A-9): Docket sheet form Martin County Courthouse, Florida

- references to "9/10/2008"

- (A2A-10): Deposition of November 19, 2008, pg. 69, lns. 2-18

Appellant Edgardo Sensi (hereinafter "appellant") appeals, in the form of a supplemental pro-se brief, from a judgment in a criminal case, entered on February 2, 2012, in the United States District Court for the District of Connecticut by the Honorable Warren W. Eginton, Senior United States District Court Judge, after the appellant entered a conditional plea of guilty to four (4) counts consisting primarily of producing child pornography and was sentenced to serve an 85 years term of incarceration. He is currently serving that sentence, designated to the United States Penitentiary at Tucson, in Tucson, Arizona.

## JURISDICTIONAL STATEMENT

### A. District Court Jurisdiction

The District Court had jurisdiction over the case pursuant to 18 USC § 3231, which grants jurisdiction to the district courts of all offenses committed against the laws of the United States. The indictment charged and the appellant entered a conditional plea of guilty to four (4) counts which are all offenses committed against the laws of the United States, to wit, one count each under 18 USC § 371, 2251(a) & 2, 2423(c), and 2251(c)(1).

### B. Court of Appeals Jurisdiction

This court has jurisdiction over the appeal pursuant to 28 USC § 1291 in that the appellant appeals from a final judgment of conviction and sentence, imposed on January 31, 2012, and entered on February 2, 2012.

V

C. Timeliness of Appeal and Pro-se Supplemental Brief

The final judgment of conviction and sentence was imposed on January 31, 2012 and entered on February 2, 2012. Appellant's counsel filed a timely Notice of Appeal on February 6, 2012. The Second Circuit Court of Appeals has also ordered that the Appellant file a supplemental pro-se brief on or before January 17, 2013.

D. Appeal from Final Judgment

This appeal is from a final judgment in that it is an appeal from the January 31, 2012 sentencing of appellant and from the entry of judgment against him in the criminal case on February 2, 2012 by the Honorable Warren W. Eginton, Senior United States District Court Judge of the District of Connecticut.

STATEMENT OF ISSUES PRESENTED FOR REVIEW

I. <u>THE DISTRICT COURT ERRED IN FAILING TO FIND THAT THE
SEIZURE OF THE LOCKED BLACK BAG EXCEEDED THE SCOPE OF THE
SEARCH WARRANT OR WAS OTHERWISE A LAWFUL SEIZURE</u>.

    a) The locked black bag as well as the closed red
duffel bag exceeded the scope of the submitted search
warrant.

    b) The officers exceeded the scope of the submitted
search warrant by searching areas of the appellant's home that
would not contain items particularized in the search warrant.

    c) The plain view doctrine does not apply to the facts
in the instant matter.

    d) The appellant did not authorize or otherwise give
Detective Broughton consent to seize and search the locked
black bag.

II. <u>THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANT'S
MOTION TO CONTINUE SENTENCING</u>.

    a) The inability for the appellant to cross-examine
Judge Elizabeth Metzger of the Circuit Court of the
Nineteenth Judicial Circuit in and for Martin County, Florida,
with respect to the authenticity of her signature on the
search warrant inventory list violated the appellant's Sixth
Amendment right.

    b) Judge Metzger's telephone call to the District
Court on January 30, 2012, violated Federal Rules of Evidence
Rule 901.

    c) By denying the Motion to Continue Sentencing, the

District Court denied the appellant's ability to present new evidence showing the Martin County Sheriff's Office investigators' intentional and unlawful altering of the search warrant inventory list to falsely show the appellant's consent to seize the locked black bag, as well as forensic evidence of the forgery of Judge Metzger's signature on the altered inventory list in an attempt to authenticate the document before submitting it to Federal authorities (I.C.E.).

## INCORPORATION BY REFERENCE

Counsel for the appellant filed an Appellate Brief on behalf of the appellant on October 5, 2012. Pursuant to a motion filed by the appellant's appointed CJA counsel, Attorney Andrew Freifeld, with respect to moving the Appellate Court to allow the appellant to file a supplemental pro-se brief, the Second Circuit Court of Appeals ordered that the appellant may file a supplemental pro-se brief and said brief shall be filed no later than January 17, 2013. The appellant respectfully requests that the verifiable facts stated, authorities cited, claims made and two volumes of appendixes submitted in Counsel's brief dated October 5, 2012, be hereby submitted and thereby made part of this pro-se supplemental brief. However, the appellant wishes to respectfully remind the Appellate Court of the motions submitted to Relieve Counsel based on Atty. Freifeld's grossly ineffective assistance of counsel. The brief submitted by Atty. Freifeld contains several instances of misstatements of facts, omissions, inflamatory assertions and presumptuous claims of

2

appellant's guilt made by Atty. Freifeld which should be regarded as adversely prejudicial to appellant's defense.

One of these instances is Atty. Freifeld's failure to include the sworn deposition of Det. Brian Broughton given on November 19, 2008, along with the original Complaint Affidavit and Supplemental Narrative (both prepared by Det. Broughton) as part of the accompanying appendix. Examples of critically important statements made by Det. Broughton on these documents and during his deposition - statements that contradict various claims made by the government - are included with this pro-se supplemental brief.

ARGUMENT

I. <u>THE DISTRICT COURT ERRED IN FAILING TO FIND</u>
   <u>THAT THE SEIZURE OF THE LOCKED BLACK BAG</u>
   <u>EXCEEDED THE SCOPE OF THE SEARCH WARRANT</u>
   <u>OR WAS OTHERWISE A LAWFUL SEIZURE</u>.

The Fourth Amendment provides that, "the right of the
people to be secure in their persons, houses, papers and
effects against unreasonable searches and seizures, shall not
be violated," U.S. Const. Amend. IV. The Supreme Court has
recognized, however, that the Fourth Amendment contains no
provision expressly precluding the use of evidence obtained in
violation of its commands, <u>Arizona v. Evans</u> 541 US 1, 131 LED
2d 34, 115 SCT 1185 (1995)(citing <u>United States v. Leon</u> 468 US
897, 82 LED 2d 677,104 SCT. 3405 (1984)).

In order to discourage or prevent such violations the
Court has fashioned an "exclusionary rule" that operates as a
judicially created remedy designed to safeguard against
violations of Fourth Amendment rights through the rule's
general deterrent effect.

Ordinarily, a search and seizure pursuant to a warrant
is presumed valid. In certain circumstances, however, a
defendant may challenge both the validity of the search
warrant and the truthfulness of factual statements made in the
affidavit, thereby undermining the validity of the warrant and
the resulting seizure.

4

In the instant matter, the constitutional and statutory validity of the search warrant rests upon the contents of the records of the State court (Florida) which issued the search warrant. However, a letter to the appellant on August 23, 2012, from Marsha Ewing, Clerk of the Circuit Court in Martin County, Florida, states that both the search warrant and inventory list are not on file with the court (A2A-1). Therefore, a critically relevant portion of the State court record - the original search warrant and inventory list - is not now before this Court, nor was either before the District Court when it held the suppression hearing of June 8, 2010.

Thus, the government, at the suppression hearing relied on documents other than the State court record as substitutes for, or to reconstruct that record. Essentially, since the clerk of the State court states that no search warrant or inventory list exists in their files, the government's case rests on portions of the alleged State court record as to which there is a bona fide question of authenticity or accuracy.

As the appellant had asserted in the Motion to Continue Sentencing (A-423 to A-454), the arresting officers' had unlawfully seized evidence from the appellant's home on September 10, 2008, in direct violation of his Fourth Amendment rights. The search warrant and inventory list that were presented at the suppression hearing had been altered and

5

falsified. The State court documents, which would contain a time stamp and seal of the Clerk of the Court, were not presented at the suppression hearing and have disappeared from the State court's files. (A2A-1)

Therefore, the State court records before the Appellate Court are in any relevant manner incomplete and insufficient to reveal the facts necessary to a proper analysis of the legal issues surrounding the District court's denial of the Motion to Suppress.

When examining the ruling on a Motion to Suppress, the Appellate Court reviews the District Court's factual finding for clear error and it's conclusions of law "de novo" viewing the evidence "in the light most favorable to the prevailing party," United States v. Harrell 268 F.3d 141 (2nd Cir 2001)(see also United States v. Dhinsa 171 F.3d 721 (2nd Cir 1998) and Ornelas v. U.S. 517 US 690, 116 SCT 1657, 134 LED 2d 911 (1976)).

a) The locked black bag as well as the red duffel bag exceeded the scope of the submitted warrant.

In Bivens v. Six Unknown Named Agents of The Federal Bureau of Narcotics, 403 US 368 29 LED 2d 619, 91 SCT 1999 (1971), the United States Supreme Court held that a search, pursuant to a valid search warrant, must be confined to the terms and limitations of the warrant authorizing.

6

It is the appellant's contention that the search warrant affidavit authorizing the search was (is) devoid of any language which authorized Det. Broughton to seize any item other than computer hardware, software, digital storage devices, etc. In fact, at the deposition of Det. Broughton on November 19, 2008, when asked by appellant's counsel about the seizure of the locked black bag, Det. Broughton responded:

"... so, getting back to the video tapes, that black bag we seized, we didn't want to seize it if there was nothing pertinent to our investigation in it." (A-445; lns. 7-9)

The obvious logical extension, based on Det. Broughton's statements with repect to seizing the locked black bag, would lead a reasonable person to conclude that he had knowledge of the contents of the locked black bag and furthermore, that the contents were "pertinent" to the investigation. However, Det. Broughton continues by stating:

"... but we did not look at the contents of it (the locked black bag) until we got back to the Sheriff's office." (A-445; lns. 21-22)

It is therefore clear that the seizure of the bag was outside the scope of the submitted search warrant as even the detective was unaware of its contents.

This Circuit has held that when items outside of the scope of a valid warrant are seized, the remedy is suppression and the return of those items, United States v. Dunlay 584 F.2d 6 (2nd Cir 1986)(see also United States v. Bonfiglio 713

7

F.2d 932 (2nd Cir 1983)); items seized but not particularized
in a lawful warrant must be suppressed).

b)   The officers exceeded the scope of the submitted
search warrant by searching areas of the appellant's home that
would not contain items particularized in the search warrant.

The Fourth Amendment's demand that search warrants
"particularly describe the place to be searched provides a
limitation curtailing the officers discretion when executing
the warrant. In Maryland v. Garrison 480 US 79, 107 SCT 1013,
94 LED 2d 72 (1987)(see also United States v. George 975 F.2d
72 (2nd Cir 1992), the court held that the Fourth Amendment's
particularity requirement ensures that the search will be
carefully tailored to its justifications and will not take on
the character of the wide-ranging exploratory searches the
Framers intended to prohibit.

In the instant matter, the genesis of this
investigation and therefore the basis of the probable cause
which resulted in a search warrant was focused on child
pornography with respect only to computers and its
accessories. Upon showing the appellant the search warrant,
Det. Broughton goes on to state:

"...and he basically invited us in, he indicated
where his computer was, in his office area." (A-156)

Subsequent to viewing the computer, however, Det.

8

Broughton, after telling the appellant to "stay in the living room" wonders off to other areas of the house. The detective states during the suppression hearing that:

"... I walked through the bedroom and walked towards the garage area where there are two closets on both left and the right. The one on the right had some female clothes in it, the one on the left had some male clothes in it. And there's also numerous boxes and duffle bags that are on the floor in the closet that's on the left with the male clothes. So we start going through some of the duffle bags and find a large amount of ADULT (emphasis mine) pornography in a large red duffle bag." (A-166)

In determining the permissable scope of a search warrant that has been authorized by a local magistrate, this court must look to the place that the magistrate who issued the warrant intended to be searched.

By Det. Broughton's own admission, he ventures into a closet and finds boxes and duffle bags in the corner of the closet on the floor. Then, although in search of computer items pursuant to the warrant, he proceeds to open these "secured" boxes and duffle bags only to find lawful "adult pronography." However, with impunity, Det. Broughton continues to search through those items that were clearly outside the scope of the submitted search warrant and placed in a location where the appellant had a reasonable expectation of privacy.

Det. Broughton continues in his testimony by stating

9

that some Hi8 video cassettes (which were not particularized in the submitted search warrant) were found in different areas:

"... I refer to the contents of some videotapes that were from the black locked bag and from the master bedroom, but I didn't refer specifically to the red duffle bag or the black duffle bag. Just the fact that there was Hi8 tapes seized." (A-223)

Det. Broughton also testifies at his deposition that "some" Hi8 video cassettes were found in a box or the closet floor. Thoughout his deposition and testimony at the suppression hearing, Det. Broughton displays utter confusion as to the location or contents of certain Hi8 video cassettes not found in the locked black bag (see exhibits: A-223, A2A-2, A2A-3[lines1-18], A2A-4[lines 9-17], A2A-5[lines 8-20], A2A-6, A2A-7[lines 15-25], A2A-8[lines 1-18].

Det. Broughton goes on to testify at the suppression hearing stating:

"... I wanted to see the contents of the locked black bag particularly because it was in close company with the pornography (adult) and the tapes that had 'triple X' on it." (A-171)

Det. Broughton searches in the area of the house that is outside of the scope of the submitted search warrant. He then stumbles upon a locked bag and some boxes and duffle bags that were tucked away in the corner of a closet where the

appellant had a reasonable expectation of privacy. Continuing his search with impunity, he "opens" these secure bags and boxes only to find commercial adult pornography and then makes the quantum leap, rationalizing that where there is adult pornography, so to there must be child pornography.

As this Circuit has repeatedly held "the ultimate focus of Fourth Amendment analysis remains whether the defendent had a reasonable expectation of privacy in the area into which the police intruded." United States v. Fields 113 F.3d 313 (2nd Cir 1997)(see also United States v. Hagg 278 F.3d 44 (2nd Cir 2002)). Had the magistrate agreed that the scope of the search or that the issuing judge intended that the scope of the search would or could authorize the search of the entire home, the judge would have specified such a search.

A warrantless search, such as this case, violates the Fourth Amendment, not because the description in the submitted warrant was insufficient or inaccurate, but rather because the detective exceeded the authority he had been granted by the issuing judge. In Horton v. California 496 US 128, 110 SCT 2301, 110 LED 2d 112 (1990), the United States Supreme Court held "if the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requriement, the subsequent seizure is unconstitutional without more."

Furthermore, the very constitutional and statutory validity of the search warrant is in doubt as the contents of the records of the State court which issued the search warrant have confirmed through its clerk, Marsha Ewing, that the court-issued search warrant is "not on file" with the court. (A2A-1)

c) The plain view doctrine does not apply to the facts in the instant matter.

The plain view doctrine authorizes the seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity. In Horton, supra, the Supreme Court held that, "under the plain view doctrine, police may lawfully seize an object without a warrant if...(1) they are lawfully in a position from which they can view the object; (2) its incriminating character is immediately apparent, and; (3) the officers have a lawful right of access to the object. (see also United States v. Pughe 441 Fed. Appx. 776 (2d Cir 2011)).

Det. Broughton's understanding of the plain view doctrine, with respect to the locked black bag and the secured red duffle bag found in the corner of the bedroom closet, several rooms away from where the appellant's computer was located in his office, is misguided, whereby he states in his

12

deposition:

"... everything is in plain view once you have a search warrant." (A2A-2;lines 2-6)


d) The appellant did not authorize or otherwise give Det. Broughton consent to seize and search the locked black bag.


Although warrantless searches of private property are generally presumed to be unreasonable, the law recognizes certain exceptions, for example, when a search is conducted pursuant to the consent of an authorized person. In Schneck v. Bustamonte 412 US 218, 93 SCT 2041, 36 LED 2d 854 (1973)(see also United States v. Lewis 386 F.3d 475 (2d Cir 2004)), the Supreme Court stated that "Voluntariness and consent is determined by reference to the totality of the circumstances."


Furthermore, when the Government relies on consent to justify a warrantless search, this Circuit has made it clear that the Government bears the burden of proving by a preponderance of the evidences that there was consent and that the consent was voluntary, United States v. Isiofia 370 F.3d 226 (2nd Cir 2004).


Reviewing the facts of the instant matter with respect to the issue of consent, it should be clear to the court that the appellant did not consent to the seizure and subsequent

search of the locked bag.

The first and most obvious question this court must ask itself is, that if this eighteen (18) year veteran of the police force, who for the last fourteen (14) years worked exclusively on crimes against children, who by virtue of his position executed hundreds of search warrants (A-141), believed the locked black bag was within the four corners of the search warrant, why would he then seek consent from the appellant to seize it? Nonetheless, Det. Broughton, upon finding the locked black bag in a remote corner or the house among other bags and boxes containing adult pornography claims that the following dialogue transpired between him and the app ellant, to wit:

"I wanted to see the contents of the black bag particularly because it was close company with the pornography and the tapes that had triple X on it. And he (appellant) indicated to me he didn't have a key, and then he said, 'take it, it's porn.'" (A-171, lines 16-21)

Yet, the appellant contests that he never gave consent or that the dialogue occurred. Had the appellant stated to the detective "there's old comic books in the bag, a collector's item," would the detective nonetheless seize the bag? It is almost incredulous to believe that a person (appellant) who proportedly possesses child pornography in a locked bag, would ensnare himself by "telling the truth" to the detective when he supposedly asks the most fatal question of them all. However, at all other times during this adjudicative process,

the appellant is not to be believed at all.

In any event, be that as it may, Det. Broughton claims that the appellant indicates to him to "take it, it's porn" and then the detective proceeds to seize the bag and supposedly write on the inventory sheet of seized items: "bag (locked containing misc porn)."

The appellant maintained, however, that he never gave consent to seize the bag nor did he disclose the contents of the bag to the detective (A-254, lines 12-25 and A-255, lines 1-3). In fact, the appellant contended at the suppression hearing that the inventory he was originally given contained only the words: "bag locked" and was devoid of any language regarding its contents, particularly porn. With repect to the appellant's contention, the following dialogue occurred between the appellant and his attorney on direct examination: (A-289, lines 2-9)

Q. You testified in regards to I believe if it is fair to say, two separate inventories that you saw in this case?

A. That is correct, ma'am -- sir. I'm sorry.

Q. And the first inventory did not include the term "miscellaneous porn"?

A. That's correct, that's the copy that was given to me.

Then, on re-cross examination, the following dialogue occurred between the appellant and the Assistant U.S.

Attorney, to wit: (A-290, lines 21-23)

Q. You've had 20 months, and now we're supposed to believe that there is a missing list (inventory) somewhere?

A. That's correct.

It has always been the appellant's contention that the detective never asked what was in the locked black bag, nor what it contained. It has also always been the appellant's contention that when he was given an inventory list of the seized item, the list contained, among other things, the words "bag locked" on the fifth line, and that the words "containing misc. porn" were added after the lock was destroyed at the sheriff's department. It should also be noted that the original inventory - with only the words "bag locked" on line five - was apparently filed with the Clerk of the Court (A2A-9, refer to entries for "9/10/2008").

Furthermore, the appellant's copy of both the search warrant and inventory list were given to his employer within a few hours of the search for safe keeping. The employer, Mr. Mahen Sanghrajka, then subsequently gave those same copies back to Det. Broughton during a search of the appellant's office computer on September 13, 2008 (A-430). By seizing the appellant's copy of the search warrant and inventory, Det. Broughton could now alter the inventory list to show the appellant's supposed consent to seize the "bag locked," and may have also altered the search warrant, which could explain why both documents are not on file with the State court.

When questioned during the deposition by appellant's counsel, Det. Broughton stated the following:

> Q. He (the appellant) said "take it?"
>
> A. He said "take it, it's just porn." So at this point I said ok, so we included that (the bag) in the inventory but we did not look at the contents of it until we got back to the sheriff's department. So the inventory, I think I saw this list right here, it just says black canvas bag, it doesn't have the contents cause we didn't know what was in it. (A-445, lines 18-25)

Clearly, therefore, the following can be ascertained by the aforementioned comments:

(1) the appellant was truthful with repect to the original inventory not stating the contents of the bag;

(2) the appellant did not give consent;

(3) the inventory list was unlawfully altered by the detective;

(4) the search warrant is invalid as no record of the search warrant is on file with the issuing court;

(5) the seizure and subsequent search of the bag and its contents must be suppressed as it ran afoul of the protections of the Fourth Amendment to the United States Constitution.

The Court (District) in rendering an opinion with respect to the consent issue declared:

"Now, on the third issue, I cannot find for the Government, I cannot really find, make a finding of consent with respect to the black duffle bag, which was locked. I find that there are credibility issues and I cannot resolve those credibility issues as to what he said or didn't say with repect to the black duffle bag. So the black duffle bag would have to be covered, as I am covering my ruling, with repect to the language of the search warrant." (A-292, lines 12-21)

It is painfully clear that the Court was bound more from the passion of the case as opposed to the legal realities of the matter. The Court, in not finding consent, nonetheless fell short of stating there was no consent on this issue as clearly predicated by the misrepresentations of the detective while he was under oath and obligated to tell the truth. In addition, the Court made no findings of fact, no conclusion of law, or indicate on what premise or law its ruling that the locked black bag be included in the "language of the search warrant" when no such language exists. The appellant therefore requests that this Court determine that the District Court erred in ruling that based on the totality of the circumstances per Schneckloth, supra, there was no consent given by the appellant.

## II. THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO CONTINUE SENTENCING.

The appellant's sentencing hearing was held on January 31, 2012. Prior to said hearing, counsel for the appellant moved the Court to continue the sentencing for, among other reasons, the purpose of challenging the authenticity of Florida Circuit Court Judge Elizabeth Metzger's signature on the inventory list submitted by Det. Broughton.

It is (was for the purpose of the Motion to Continue Sentencing (A-423 to A-454)) the appellant's contention that the inventory submitted by Det. Broughton to the Federal authorities was altered. As was previously stated, Det. Broughton admitted that the phrase "containing misc. porn" was added on the inventory list after the lock was broken and the contents of the locked black bag were identified at the sheriff's department. Furthermore, the appellant contended that the judge's signature on the inventory sheet (which in and of itself is rare to have a judge sign an inventory sheet) was itself a forgery, as shown by the forensic document examination (A-432 to A-441). The motion requested the District Court judge to revisit the issue of the altered inventory sheet and seizure of evidence predicated on the discovery of this new information.

At the commencement of the sentencing hearing, counsel for the appellant asked the Court to render a ruling with respect to the appellant's motion for continuance, to which

19

the Court replied:

"Oh, oh good, sure. I spoke to Judge Metzger who was very, very cooperative. As I said there at the end of the conversation, I appreciate it very much. She called, me, I was going to call her but she called me and she assured me that's her signature, she remembered it and there is no reason for me to grant your motion. So, on the basis of my conversation with Judge Metzger, I will deny that motion for a continuance. (A-458, lines 17-25)

a) The inability for the appellant to cross-examine Judge Metzger with respect to her signature violated the appellant's Sixth Amendment right.

The Sixth Amendment provides that "in all criminal prosecution, the accused shall enjoy the right... to confront the witness against him. The right enjoyed by a criminal defendant to confront the witness against him is a fundamental right essential to a fair trial in a criminal prosecution," Paintor v. Texas 380 US 400, 130 LED 2d 923 85 SCT 1065 (1965), and is designed to secure for the defendant the opportunity of cross-examination, Douglas v. Alabama 380 US 415, 13 LED 2d 934, 85 SCT 1074 (1965). A primary interest secured by the confrontation clause is the right to cross-examination, United States v. Laljie 184 F.3d 1801 (2nd Cir 1999).

In reviewing a right to controntation violation, the

20

reviewing court should consider a host of factors that include:

(1) the importance of the witness testimony in the prosecutor's case,

(2) whether the testimony was cumulative,

(3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,

(4) the extent of cross-examination otherwise permitted and,

(5) the strength of the prosecutor's case.

(see Wray v. Johnson 202 F.3d 515 (2d Cir 2000) and United States v. Colombo 909 F.2d 711 (2nd Cir 1990).

Judge Metzger, in the instant matter, was clearly a witness who was subject to cross-examination. However, the appellant was deprived of this opportunity by the District Court.

In Crawford v. Washington 541 US 36, 158 LED 2d 177, 124 SCT 1354 (2004), the United States Supreme Court defined a witness as "those who bore testimony where, (a) testimony was typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."

Furthermore, the Supreme Court rejected the view that the confrontation clause applied of its own force to only in-court testimony and that historical record supported by the proposition that the Constitution's Framers would not have

21

allowed admission of testimonial statements of a witness who
did not appear at trial, unless:

> (1) the witness was unavailable to testify, and

> (2) the accused had had a prior opportunity for cross-
examination.

By placing a telephone call to the District Court to
indicate that her signature was authentic, the very fact
was contested by the appellant, Judge Metzger participated as
an ex-parte witness, depriving the appellate of cross-
examination thereby violating the petitioner's Sixth Amendment
Constitution right.

Furthermore, by receiving the telephone call, ex-
parte, on an issue which was being contested by the appellant,
the District Court judge conducted himself as a witness and
therefore subject to cross esamination himself.

In Gersten v. Sentauski 426 F.3d 588 (2d Cir 2005),
this court ruled that an affidavit by a judge was not given
additional evidentiary weight in light of the petitioner's
opportunity to test the veracity through cross-examination.

Furthermore, in Hollis v. Smith 571 F.2d 685 (2nd Cir
1978), the circuit found that if inquiry was to be made with
respect to the judge's mental process, it should have been
done so in open court with Hollis having the right of cross-
examination.

22

The statement made by the District Court is tantamount to judicial testimony requiring cross-examination by the appellant.

b) <u>Judge Metzger's phone call to the District Court violated Federal Rules of Evidence, Rule 901</u>.

Rule 901 Authenticating or Identifying Evidence states in pertinent part...

(a) General - to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples:

(5) Opinion about a voice... an opinion identifying a person's voice - whether heard first hand or through mechanical or electronic transmission or recording - based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

(6) Evidence About a Telephone Conversation - for telephone conversation, evidence that a call was made to the number assigned at the time it was to have been made.

(A) A particular person, if circumstances, including self-identification, show that person anwering was the one called; or

(B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

23

Authenticity of evidence must be clear and convincing, United States v. Hamilton 334 F.3d 170 (2d Cir 2003), under Rule 901 of the Federal Rules of Evidence, authentication is satisfied by evidence sufficient to support a finding that the matter in question is what it's proponent claims.

In the instant matter, the appellant had forensic evidence that Judge Metzger's signature on the inventory list was not who it proported to be. The District Court, by accepting the alleged phone call by Judge Metzger became a witness to the outstanding issue. By submitting the evidence, the Court became the proponent or otherwise "defacto" as attorney and then, reverted back to his assignment as a District Court judge by ruling on the admissability of the evidence he produced and introduced. Furthermore, a review of the Court's docket entries for January 30, 2012, show no indication of ex-parte testimony being introduced in this case. The only fathomable remedy is a reversal of the appellant's conviction.

CONCLUSION

For all the foregoing reasons, the appellant prays that:

(1) The Court reverse and remand the decision of the District Court with respect to the suppression of the evidence and find that the appellant's Fourth Amendment right was violated.

(2) That the appellant did not authorize or otherwise consent to the search of the locked black bag and therefore any and all evidence derived therefrom must be suppressed pursuant to the fruit of the poisonous tree doctrine.

(3) The appelant's sixth amendment right of confrontation was violated and the conviction should therefore be reversed.

Respectfully submitted,

Edgardo Sensi

Appellant

Supplemental pro-se brief

CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing brief was sent on this 7th day of January, 2013, and addressed to:

Catherine O'Hagan Wolfe

Clerk of Court

United States Court of Appeals for the Second Circuit

40 Foley Square

New York, New York  10007

Toneta Sula

Case Manager

United States Court of Appeals for the Second Circuit

40 Foley Square

New York, New York  10007

Andrew H. Freifeld, Esq.

Attorney at Law

30 Vesey Street, 6th Floor

New York, New York  10007

Krishna Patel, A.U.S.A.

United States Attorney's Office

915 Lafayette Boulevard

Bridgeport, Connecticut 06604

I, Edgardo Sensi, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the forgoing is true and correct.

Executed on this ___7TH___ day of January, 2013.

Signed: _____

Edgardo Sensi

Edgardo Sensi

Appellant

#17211-014

United States Penitentiary Tucson

P.O. Box 24550

Tucson, AZ  85734

APPENDIX 2A

Supplemental Exhibits

1

IN THE CIRCUIT COURT OF THE NINETEENTH

JUDICIAL CIRCUIT IN AND FOR

MARTIN, FLORIDA

CASE NO. 432008CF1285A

STATE OF FLORIDA,

　　　　Plaintiff,

vs.

EDGARDO SENSI,

　　　　Defendant.

_____ /

COPY

DEPOSITION OF DETECTIVE BRIAN BROUGHTON
TAKEN ON BEHALF OF THE DEFENDANT

Stuart, Florida
November 19, 2008
9:00 a.m. - 10:45 a.m.

TREASURE COAST COURT REPORTING, INC.

(772) 221-3244



*Clerk of the Circuit Court • Florida*
P.O. BOX 9016 • STUART, FLORIDA 34995 (772) 288-5576
E-mail: mewing@martin.fl.us
http://clerk-web.martin.fl.us/ClerkWeb

## MARSHA EWING

August 23, 2012

Edgardo Sensi
17211-014
United States Penitentiary Tucson
PO BOX 24550
Tucson, AZ 85734

08-1258cfma

We received your letter requesting copies of the Search Warrant & Inventory List those Documents are not in our file.

Criminal Division
Martin County Clerk of Courts

1  videotapes.

2    Q.  Now these videotapes were in plain view

3  somewhere in the house?

4    A.  Yes.  Well, everything is in plain view once

5  you have a search warrant.  They were in a duffle

6  bag mixed in with adult pornography.

7    Q.  How did you get inside the duffle bag?

8    A.  Well, there was a couple different duffle

9  bags.  The one duffle bag which is a big red duffle

10  bag, and I can kind of show you and give you an

11  idea what we are talking about.  This red duffle

12  bag right here, just sitting there, you just unzip

13  it.  (Indicating.)

14    Q.  Where was this duffle bag found?

15    A.  This was found in the bottom right-hand

16  floor of the male walk-in closet in the master

17  bedroom.  There was a female with female clothes on

18  the other side, this was all the male.

19    Q.  Of the same bedroom?

20    A.  These videotapes were found in this bag.

21  (Indicating.)  There was also a box --

22    Q.  Are those Super8?

23    A.  Yes, Hi8.

24    Q.  Hi8.

25    A.  Also there was a couple more, two more found

1    in a box that was also next to this duffle bag in
2    the closet.

3        Q.  We're talking Hi8 when you say couple more?

4        A.  They're all Hi8.  One's there and one's
5    there.  Same thing there.  This was also mixed in
6    with a vibrator and found in this box.

7    (Indicating.)

8        Q.  What was mixed in with the vibrator?

9        A.  These tapes right here.  They were in this
10   box, this little Pokemon tin thing.  Let me see
11   what else.  And then, of course, there was another
12   box that contained no little tapes but contained a
13   lot of adult pornography some more.  And then there
14   was a black, and you can only see it here because I
15   pulled it out cause I didn't know what the contents
16   were at the time, there was a black duffle bag next
17   to this in the closet.  It had a lock on it, could
18   not get into the black duffle bag.

19       Q.  We see part of the black duffle bag.

20       A.  Yeah.  I put it out, we were taking pictures
21   of it.  It's locked with a padlock and a key.

22       Q.  This is a walk-in closet in the master
23   bedroom?

24       A.  Yes.

25       Q.  And you identified this as a male's closet?

1 A. Yeah.

2 Q. Based on what?

3 A. The clothing.

4 Q. And you identified the clothing as --

5 A. Male. Suits, pants.

6 Q. Edgardo's clothing?

7 A. He was the only one living there.

8 Q. The only male at the time.

9 A. The only male at the time. And it was in

10 the master bedroom. This black bag was locked with

11 a padlock. And so after finding these tapes and --

12 Q. Let me ask you this. The tapes that you did

13 find in the red bag and in the box, are those child

14 pornography or do they contain child pornography?

15 A. They contain a mixture of adult pornography

16 and I believe the attempted production of child

17 pornography.

18 Q. How do you know based upon the labels that

19 they might contain information related to attempted

20 production of child pornography?

21 A. Well, the labels don't say child pornography

22 on it. Just my experience and training that when

23 there is a female name and the words XXX I'm

24 assuming that there's some type of sex on there. I

25 know it's not a commercial tape because even though

1  it was mixed in we didn't take the commercial stuff
2  because those are labeled.
3      Q.  Let me get this fresh in my mind before we
4  go on.  Inside this closet in the master bedroom
5  you find a box and a duffle bag that had videotapes
6  in it.
7      A.  A lot of commercial stuff.
8      Q.  A lot of commercial videotapes.  The
9  commercial videotapes, were they child pornography?
10     A.  No, they were in the box what you see there.
11     Q.  And in the red bag, was there any child
12  pornography found in the red bag?
13     A.  In the red bag I believe these were pulled
14  out, I think one or two of these.
15     Q.  One, two, three, four, five Hi8s?
16     A.  Right, Hi8s were found, and I think another
17  three were found in this thing.  (Indicating.)
18     Q.  The box was located in the same closet?
19     A.  Yup.  Same closet.  He had a big pile of
20  couple duffle bags, a box, a box on top of that.
21     Q.  You recall the names or any of the labels
22  that may have appeared on the two Hi8s that were
23  found on the box?
24     A.  I think we put them all out on the floor
25  here.  It's kind of hard to see.  One of the ones

1  was XXX Pli, P-L-I, another one was Polita XXX, and

2  I'd have to look at the physical tapes themselves

3  to find out what the rest of the labels -- one was

4  Destiny. And so just we did not look at the tapes

5  on scene and so they were recovered. I thought

6  that they were pursuant to the search warrant cause

7  we were looking for movies, and obviously if we

8  determined that they were not child pornography

9  they would have been returned back to the owner.

10    Q. Let me ask you this while the thought is

11  fresh in my mind.

12    A. Sure.

13    Q. Was there any label or any picture on any of

14  these tapes that would identify that tape to you

15  before you seized them and viewed them? Was there

16  anything specific on them that would lead you to

17  believe child pornography appeared on those

18  videotapes?

19    A. Child pornography, no. Pornography, yes.

20  Just the fact that the word XXX appeared on several

21  of the tapes beside what appeared to be a female

22  name.

23    Q. If you would take the Affidavit for Search

24  Warrant and show me where you let the Judge or put

25  the Judge on notice you were looking for child

1    There was a small master key, master lock key that

2    did fit and unlock the lock that he said he didn't

3    have a key to.  And we recovered that.  So we do

4    have that key which he turned into his boss.

5        Q.  Do you know when he returned the keys to the

6    boss?

7        A.  The morning after the search warrant prior

8    to his arrest.

9        Q.  Do you know what the other keys or --

10       A.  Probably company keys.

11       Q.  I just want to walk you through the

12   inventory here.  The Dell Inspiron computer, that's

13   the laptop that you showed in the pictures?

14       A.  Yes.

15       Q.  The eight Hi8 videotapes.

16       A.  Yes.

17       Q.  Five came from the --

18       A.  And three came from the box.  Remember that

19   white box that I showed you?

20       Q.  With the vibrator?

21       A.  These are the five that came out of the

22   black bag, and then the box with the vibrator,

23   three more came out of that.  And I will show you

24   those.

25       Q.  The black bag wasn't opened --

68

1    A.  No, no, not the black bag, I'm sorry, the

2  box, the white box.

3    Q.  The white box.

4    A.  The white box.

5    Q.  Had five tapes.

6    A.  Had three tapes, you can see those right

7  there.  (Indicating.)  The red bag, I'm sorry,

8  contained five Hi8 tapes.

9    Q.  Understood.

*LIE CONTAINED NO TAPES*

10    A.  So the tapes that are reflected or recovered

11  in the black bag are not reflected in the inventory

12  because we didn't know about those until later.

13    Q.  Right.  The eight, three from the box, five

14  from the red bag.

15    A.  Yes.

*FAMILY VIDEOS FOUND IN MY CHILDHOOD CASE*

16    Q.  And the red bag was in near proximity to the

17  black bag?

18    A.  Yes.  It's all together.  There's like a

19  couple boxes and then the black bag.

20    Q.  Understood.  The Sony Video Hi8 Handycam,

21  this is the one that was found in the other front

22  bedroom?

23    A.  Yes.

24    Q.  And the bag locked contained miscellaneous

25  porn, that would be the black bag?

Case Abstract Offense A2A-2

# Progress Docket

| Docket Date: | Docket Description |
|---|---|
| 9/10/2008 | CASE FILED WITH CLERK |
| 9/10/2008 | SWORN COMPLAINT SEQ: 1,SEQ: 2,SEQ: 3,SEQ: 4,SEQ: 5,SEQ: 6 |
| 9/10/2008 | SWORN COMPLAINT SEQ: 7,SEQ: 8,SEQ: 9,SEQ: 10 |
| 9/10/2008 | CO JUDGE WARRANT FOR SWORN COMPLAINT WITH JUDGES WARRANT |
| 9/10/2008 | o SIGNED WARRANT FROM JUDGE'S OFFICE/COPY IN FILE |
| 9/10/2008 | COMPLAINT AFFIDAVIT |
| 9/10/2008 | SECURED CASE |
| 9/10/2008 | o CO JUDGE WARRANT EXECUTED MARTIN COUNTY SHERIFF By BROUGHTON |
| 9/10/2008 | ARREST SEQ: 1,SEQ: 2,SEQ: 3,SEQ: 4,SEQ: 5,SEQ: 6,SEQ: 7 |
| 9/10/2008 | ARREST SEQ: 8,SEQ: 9,SEQ: 10 |
| 9/11/2008 | UNSECURE CASE |
| 9/11/2008 | CASE OPENED |
| 9/11/2008 | WARRANT |
| 9/11/2008 | 10 COUNTS (10 PAGES) |
| 9/11/2008 | COMPLAINT AFFIDAVIT |
| 9/11/2008 | COPY |
| 9/11/2008 | FIRST APPEARANCE ORDER |
| 9/11/2008 | BOND SET AT $100,000 EA COUNT |
| 9/11/2008 | PUBLIC DEFENDER REFUSAL PER SHERIFF |
| 9/11/2008 | ARREST AFFIDAVIT |
| 9/12/2008 | JUDGE STEVEN J LEVIN ASSIGNED |
| 9/18/2008 | FILED CNT: 1,CNT: 2,CNT: 3,CNT: 4,CNT: 5,CNT: 6,CNT: 7 |
| 9/18/2008 | FILED CNT: 8,CNT: 9,CNT: 10,CNT: 11,CNT: 12,CNT: 13 |
| 9/18/2008 | FILED CNT: 14,CNT: 15,CNT: 16,CNT: 17,CNT: 18,CNT: 19 |
| 9/18/2008 | FILED CNT: 20,CNT: 21,CNT: 22,CNT: 23,CNT: 24,CNT: 25 |
| 9/18/2008 | FILED CNT: 26,CNT: 27,CNT: 28,CNT: 29,CNT: 30,CNT: 31 |
| 9/18/2008 | FILED CNT: 32,CNT: 33,CNT: 34,CNT: 35,CNT: 36,CNT: 37 |
| 9/18/2008 | FILED CNT: 38,CNT: 39,CNT: 40,CNT: 41,CNT: 42,CNT: 43 |
| 9/18/2008 | FILED CNT: 44,CNT: 45,CNT: 46,CNT: 47,CNT: 48,CNT: 49 |
| 9/18/2008 | FILED CNT: 50,CNT: 51,CNT: 52,CNT: 53,CNT: 54,CNT: 55 |
| 9/18/2008 | FILED CNT: 56,CNT: 57,CNT: 58,CNT: 59,CNT: 60,CNT: 61 |
| 9/18/2008 | FILED CNT: 62,CNT: 63,CNT: 64,CNT: 65,CNT: 66,CNT: 67 |
| 9/18/2008 | FILED CNT: 68,CNT: 69,CNT: 70,CNT: 71,CNT: 72,CNT: 73 |
| 9/18/2008 | FILED CNT: 74,CNT: 75,CNT: 76 |
| 9/18/2008 | STATE'S INFORMATION FILED |
| 9/18/2008 | CAPIAS FOR DIRECT FILE INFORMATION BY STATE |
| 9/19/2008 | PROSECUTOR: KIRKWOOD ERIN ASSIGNED |
| 9/19/2008 | MOTION |
| 9/19/2008 | FOR BOND REDUCTION |
| 9/19/2008 | ARRAIGNMENT SET FOR 10/16/2008 AT 09:15 IN F03/F, JDG: |
| 9/19/2008 | STEVEN J LEVIN |
| 9/22/2008 | SIGNED WARRANT FROM JUDGE'S OFFICE/COPY IN FILE |
| 9/23/2008 | CAPIAS EXECUTED MARTIN COUNTY SHERIFF By KUKUVKA |
| 9/23/2008 | ARREST SEQ: 11,SEQ: 12,SEQ: 13,SEQ: 14,SEQ: 15,SEQ: 16 |
| 9/23/2008 | ARREST SEQ: 17,SEQ: 18,SEQ: 19,SEQ: 20,SEQ: 21,SEQ: 22 |
| 9/23/2008 | ARREST SEQ: 23,SEQ: 24,SEQ: 25,SEQ: 26,SEQ: 27,SEQ: 28 |
| 9/23/2008 | ARREST SEQ: 29,SEQ: 30,SEQ: 31,SEQ: 32,SEQ: 33,SEQ: 34 |
| 9/23/2008 | ARREST SEQ: 35,SEQ: 36,SEQ: 37,SEQ: 38,SEQ: 39,SEQ: 40 |
| 9/23/2008 | ARREST SEQ: 41,SEQ: 42,SEQ: 43,SEQ: 44,SEQ: 45,SEQ: 46 |
| 9/23/2008 | ARREST SEQ: 47,SEQ: 48,SEQ: 49,SEQ: 50,SEQ: 51,SEQ: 52 |
| 9/23/2008 | ARREST SEQ: 53,SEQ: 54,SEQ: 55,SEQ: 56,SEQ: 57,SEQ: 58 |
| 9/23/2008 | ARREST SEQ: 59,SEQ: 60,SEQ: 61,SEQ: 62,SEQ: 63,SEQ: 64 |
| 9/23/2008 | ARREST SEQ: 65,SEQ: 66,SEQ: 67,SEQ: 68,SEQ: 69,SEQ: 70 |
| 9/23/2008 | ARREST SEQ: 71,SEQ: 72,SEQ: 73,SEQ: 74,SEQ: 75,SEQ: 76 |
| 9/24/2008 | ARREST AFFIDAVIT |
| 9/24/2008 | CT11-76 |
| 9/24/2008 | CAPIAS |

1    A.  Yes.

2    Q.  At the time that you completed this

3  inventory list -- I'm looking to see if it was

4  dated.

5    A.  9-10.

6    Q.  9-10. 'There we go.  There's the date up

7  there as well.  At the time that you completed this

8  inventory, if you hadn't looked in the bag how

9  would you know that it contained miscellaneous

10  porn?

11    A.  That's what was relayed to us by Mr. Sensi.

12  He said take it, it's porn.  So when I told that to

13  my partner who, this is his handwriting, he wrote

14  that in there assuming that if Mr. Sensi was being

15  truthful then it was miscellaneous porn.

16    Q.  So he was taking Sensi's word there.

17    A.  Yes.  And that's one of the reasons we took

18  it.

19    Q.  Right.  And the various papers you're

20  talking about, some of the documents you previously

21  described.

22    A.  Yes.

23    Q.  The short stories?

24    A.  No, we actually took two handwritten -- let

25  me just go back.  The handwritten labels on the